BOSTON, CAPE COD AND NEW YORK CANAL COMPANY *vs.*
FRANK H. HENSHAW.

SAME *vs.* EDWARD S. BERRY.

SAME *vs.* SALATHIEL H. PERRY.

SAME *vs.* FREDERIC RAYMOND.

SAME *vs.* PRESTON L. BLACKWELL, executor.

SAME *vs.* SARAH F. BUTLER, administratrix.

SAME *vs.* HIRAM L. PERRY, administrator.

SAME *vs.* MISSOURI H. STEVENS, administratrix.

SAME *vs.* BENJAMIN F. BERRY.

SAME *vs.* CHARLES F. BERRY.

SAME *vs.* WILLIAM B. TABER.

SAME *vs.* JOHN F. PERRY & others.

Barnstable.   November 19, 1917. — January 5, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Damages,* For property taken or damaged under statutory authority.   *Oyster Fishery.   Boston, Cape Cod and New York Canal Company.   Partnership.*

Under St. 1899, c. 448, § 16, providing that the Boston, Cape Cod and New York Canal Company should pay damages "In case of any injury to any fishery, including oyster fisheries, caused by said canal company by the deposit of ex-

cavated material, or in any other way, . . . to the owner or licensee of said fishery," such owner or licensee is entitled to damages, wherever his fishery which was injured was located, within or without the location of the canal, and whether the injury suffered was to oysters in the soil and the seed attached thereto or resulted in the permanent destruction of the fishery.

The owner or licensee of an oyster fishery injured by the Boston, Cape Cod and New York Canal Company in the construction of its canal can recover damages for oyster seed or oysters placed in the ground at a time subsequent to the date of the filing of the company's location in the registry of deeds for Barnstable County.

The damages for such injury should be determined as of the date when the injury is done. In this case the injury was two years and one month after the date of the filing of the company's location.

*Whether* the formation, by several persons holding separate licenses from a town for the planting, growing and digging of oysters, of a partnership whereby the partners carried on the business of oyster fishing under all the grants "jointly and as partners and kept no separate account of the oysters on the different grants" was such an assignment of the licenses as, under R. L. c. 91, § 107, required the written consent of the selectmen of the town, so that under § 110 of that chapter, in default of such consent, the business might have been declared forfeited upon objection by the Commonwealth, was not decided in this case.

If the objection, that the grant of a license by the selectmen of a town for the planting, growing and digging of oysters, had become forfeited under R. L. c. 91, §§ 107, 110, because it had been assigned without the consent in writing of the selectmen, has not been raised and enforced by the Commonwealth, it cannot successfully be raised by the Boston, Cape Cod and New York Canal Company in a proceeding under St. 1899, c. 448, § 16, for the assessment of damages resulting to such a fishery by acts of the canal company in the construction of its canal.

TWELVE PETITIONS, filed in the Superior Court for the county of Barnstable on February 11, 1914, by the Boston, Cape Cod and New York Canal Company, hereinafter called the canal company, under St. 1899, c. 448, § 16, for the assessment by a jury of the damages to which the respective respondents are entitled by reason of injury caused by the petitioner in the construction of its canal to oyster fisheries where the respondents had been given licenses by the town of Bourne to plant, grow and dig oysters.

The respondents, under the circumstances described in the opinion, severally had filed petitions for the assessment of their damages with the commissioners on inland fisheries and game, who had made awards. These twelve petitions were filed because the canal company was dissatisfied with those awards.

In the Superior Court by agreement of the parties the petitions

were referred to three commissioners under a rule which provided that their reports should be final as to matters of fact, but subject to review by the court as to matters of law. The material portions of the reports of the commissioners are described in the opinion.

The cases were heard together in the Superior Court upon the reports of the commissioners by *Jenney, J.*, who refused to make certain rulings requested by the petitioner, which are described in the opinion, confirmed the reports of the commissioners and ordered judgments for the respective respondents in the following sums: Frank H. Henshaw, $1314.59; Edward S. Berry, $992.65; Salathiel H. Perry, $2,171.09; Frederic Raymond, $2,276.23; Preston L. Blackwell, executor, $1,182.30; Sarah F. Butler, administratrix, $9,315.80; Hiram L. Perry, administrator, $1,057.48; Missouri H. Stevens, administratrix, $3,519.08; Benjamin F. Berry, $7,112.65; Charles F. Berry, $7,847.32; William B. Taber, $2,181.45; John F. Perry and others, $3,190.73.

The petitioner alleged exceptions.

St. 1899, c. 448, § 16, is as follows: "In case of any injury to any fishery, including oyster fisheries, caused by said canal company by the deposit of excavated material, or in any other way, the canal company shall pay to the owner or licensee of said fishery, or to the towns of Sandwich or Bourne in case the fisheries destroyed or damaged are public fisheries, such damages as shall upon the application of either party be estimated by the commissioners on inland fisheries and game, in a manner similar, so far as may be, to that provided in laying out highways, and with a right of appeal to a jury by proceedings similar to those provided for in section five of this act."

*F. B. Greenhalge*, (*S. H. Pillsbury* with him,) for the petitioner.

*E. S. Ellis*, for the respondents in the first seven cases.

*C. C. Paine*, for the respondents in the last five cases.

CARROLL, J. The selectmen of Bourne granted to the several respondents or to their assignors, under R. L. c. 91, § 104, licenses to plant, grow and dig oysters in the town of Bourne. The canal company filed its location in the registry of deeds for the county of Barnstable on July 8, 1907, and the dredging of its canal was begun on August 8, 1909. These proceedings under St. 1899, c. 448, § 16, are for the assessment of damages to the respondents' oyster

fisheries alleged to have been caused by the construction of the petitioner's canal.   The cases will be considered together.

In the Superior Court, by agreement of the parties, the cases were referred to three commissioners under a rule providing that their reports should be final on the facts.   At the hearing on the confirmation of the reports, the petitioner requested the court to rule in each case:

"1. That upon the findings of the commissioners the respondent was not entitled to recover and that judgment should be entered in favor of the petitioner;

"2. That, if the respondent was entitled to recover at all, the measure of recovery was limited to the oysters in the soil and the spat or oyster seed attached thereto and that no damages should in any event, be allowed on account of impairment in the value of the grants."

These requests for rulings were refused and the petitioner excepted.   The judge ordered, subject to the petitioner's exceptions, that the reports of the commissioners be confirmed and judgment entered for the respondents.

1. The St. 1899, c. 448, § 16, provides that the canal company shall pay damages "In case of any injury to any fishery, including oyster fisheries, caused by said canal company by the deposit of excavated material, or in any other way, . . . to the owner, or licensee of said fishery."   Under § 24, provision is made for the recovery of damages where lands are taken by condemnation for the location of said canal.   The petitioner contends that the respondents are not entitled to damages for the impairment in value of any license applicable to flats within the location of the canal.   No land of the respondent was taken and no damages are asked for on account of the taking of land under § 24.   The damages recovered were for injuries to the respondents' oyster fisheries; some of which, according to the commissioners' findings, were within, and some outside, the location of the canal.   (In using the word "location" the commissioners probably had in mind the approaches of the canal that extended seaward from high water mark.)   Section 16 was intended to apply where these oyster fisheries were injured in the authorized construction and completion of the canal as a navigable waterway, either by the "deposit of excavated material, or in any other way," although the

work was done in a proper manner and there was no negligence of the petitioner. This section was not limited to the fisheries outside the canal approaches: it included all such property within the location (using the word in the sense it was used by the commissioners) as well as property beyond these approaches, if injured in any way by the petitioner's operations in the construction of the canal, — whether the injury was to oysters in the soil and the seed attached thereto, or resulted in the permanent destruction of the respondents' grants. The words "in any other way" were used in the statute in a comprehensive sense. We have no doubt they were intended to apply where the fisheries were destroyed or injured in any way by any of the petitioner's operations, wherever located. The licenses granted by the selectmen to plant, dig and grow oysters upon the flats in the tide waters of Buzzards Bay within the limits of the town of Bourne for the term of ten years, were valuable privileges: they were property rights, and it was the intention of the Legislature that the owners thereof should be compensated in damages, if they were deprived of their property or it was in any manner taken away or destroyed in the performance of this work. See *Earle* v. *Commonwealth*, 180 Mass. 579, and *Allen* v. *Commonwealth*, 188 Mass. 59, where under the metropolitan water supply act, St. 1895, c. 488, § 14, the practice of a physician and the business of a farmer decreased in value by carrying out the act, and the petitioners were awarded compensation. As stated in *Keene* v. *Gifford*, 158 Mass. 120, at page 122: "The exclusive occupation of the territory for a considerable time was originally essential to the profit of the undertaking, and is secured by making the license for so long a term as twenty (now ten) years, and by giving during the term the exclusive use of the territory." The Legislature did not intend to compensate merely the owners of fisheries who were beyond the approaches of the canal, whose oysters or grants were injured by sediment or excavated matter or from other causes, and leave without compensation the owners of fisheries who were within the approaches of the canal, or whose grants have "been dug over entirely and some in part," and rendered entirely useless.

2. The further contention of the petitioner is that no damages should be allowed for oyster seed or oysters in the ground unless placed there before July 8, 1907, — the date of the filing of the

respondent's location in the registry of deeds for Barnstable County. It was decided in *Taylor* v. *Boston, Cape Cod & New York Canal Co.* 224 Mass. 307, that until the termination of the license of the grower, the shell fish remained his property and he could recover damages therefor under St. 1899, c. 448, § 16. While the landowner must petition for damages within six months after the filing of the location, no such provision is contained in § 16. The owners of oyster fisheries could not petition for damages until the actual damage was done. The grower was not required to anticipate damages to his property from the filing of the location, and should be permitted to recover for the value of the oysters and the seed in the soil, even if placed there subsequent to July 8, 1907.

3. What we have said disposes of the petitioner's claim that damages for the injury to the respondents' grants should not be determined as of August 8, 1909. No damage was done to these grants until that time. The commissioners rightly considered the value of the property at the time it was injured.

4. In the case of John F. Perry and others the respondents were inhabitants of the town of Bourne. John F. Perry was granted licenses numbered thirty-four, thirty-five, and thirty-six, Wallace J. Perry was granted licenses numbered thirty-nine and forty-one, and Harry E. Perry was granted licenses numbered twenty-eight and forty-three, to plant, dig and grow oysters in Bourne Neck flats. They carried on the culture of oysters on these grants as partners. The petitioner argues that these licenses are void because of the formation of the partnership which involved the transfer of an interest in the enterprise which amounts to a partial assignment, that under R. L. c. 91, § 107, no assignment of such a license shall be made without the written consent of the selectmen, and the licensee who violates the provisions of the statute relating to the growing of oysters shall forfeit his license. R. L. c. 91, § 110. Whether the formation of a partnership whereby the partners carried on the business "jointly and as partners and kept no separate account of the oysters on the different grants" was such an assignment as required the written consent of the selectmen, or that the failure to obtain this consent was a violation of the statute and worked a forfeiture of the licenses, are questions which we do not decide. Even if we assume in favor

of the petitioner that the respondents' acts were contrary to the statute, the licenses granted to them cannot be forfeited at the request of a stranger to the grant, in a collateral proceeding. And it cannot be contended successfully in such a case that the licenses have been forfeited. The privilege of carrying on the business of growing oysters was granted to the respondents under an act of the Legislature, and until objection is made by the grantor and the forfeiture insisted on by the Commonwealth, the petitioner cannot rely on the alleged violation of the statute as an excuse for refusing compensation for the property injured. See in this connection *Boston Glass Manufactory* v. *Langdon,* 24 Pick. 49; *New York Indians* v. *United States,* 170 U. S. 1, 24, 25; *Kennebec Water District* v. *Waterville,* 97 Maine, 185, 210.

In the case where the original respondents are deceased, we understand that no question is now raised that the administrator and executors properly were permitted to prosecute the petition. *Webster* v. *Lowell,* 139 Mass. 172.

*Exceptions overruled.*