MARY V. ALHOLM *vs.* TOWN OF WAREHAM & others (and three companion cases[1]).

Plymouth.    September 14, 1976. — December 31, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, KAPLAN, & WILKINS, JJ.

*Negligence,* Motor vehicle, Municipal dump, Proximate cause. *Evidence,* Relevancy and materiality.

In an action against a town for personal injuries arising from a motor vehicle accident, where there was no evidence that the accident was the result of the town's negligent maintenance of its dump, there was no error in directing a verdict for the town even though the judge had granted the town's motion for a directed verdict on the ground of municipal immunity. [623-628]

In an action for personal injuries arising from a multivehicle accident, even though there was evidence to warrant an inference of negligence as to each of the defendants, the judge did not err in directing verdicts in favor of several defendants where there was no evidence to warrant a finding that there was contact between their vehicles and the plaintiff's, but he erred in directing verdicts in favor of two defendants as to whom there was evidence of contact with the plaintiff's vehicle. [628-631]

In an action for personal injuries arising from a multivehicle accident, there was no error in the exclusion of testimony by a State trooper and a diagram made by him approximately one hour after the accident as to the relative positions of all the vehicles where the wit-

---

[1] The companion cases are: Albert Guidaboni *vs.* Town of Wareham; David L. Jackson *vs.* Town of Wareham; and John F. Sylvia, Jr., *vs.* Town of Wareham.

ness was unable to state whether any of the vehicles had been moved during that hour and where there was other testimony that the relative positions of the vehicles had shifted substantially from the time of initial impact to the time the diagram was made. [631-632]

FOUR ACTIONS OF TORT. Writs in the Superior Court dated August 7, 1972, and December 27, 1972.

The actions were tried before *Beaudreau,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Mario Misci,* for Mary V. Alholm, submitted a brief.

*Charles R. Desmarais,* for the town of Wareham.

*William J. Dailey, Jr.,* for Albert Guidaboni & others, submitted a brief.

*William J. Fenton, Frederick C. Campbell, & William J. Dailey, Jr.,* for Andrew Barrs & another, submitted a brief.

*David D. Leahy,* for David L. Jackson, & *Robert J. Reynolds,* for John F. Sylvia, Jr., submitted a brief.

*Philander S. Ratzkoff, James F. Meehan, & Richard L. Neumeier,* for H. P. Hood, Inc. & another, submitted a brief.

*William G. Burke,* for Alfred W. Johnson, submitted a brief.

*Chris Byron & Richard P. Schaefer,* for Everett R. Olson, submitted a brief.

*Joseph F. Hodapp,* for Robert D. Reed, submitted a brief.

*Martin S. Cosgrove,* for Frederick Tanous, submitted a brief.

HENNESSEY, C.J. These cases arise out of a multicar accident which occurred on April 28, 1971, on the eastbound portion of Route 25 in Wareham, Massachusetts. The cases were tried to a jury in the Superior Court. At the close of the plaintiffs' evidence with respect to liability, the trial judge granted motions for directed verdicts as to all defendants in all cases. The plaintiff Mary V. Alholm, a passenger in one of the vehicles involved in the accident, brought actions for personal injuries against the town of

Wareham, against the drivers of the other vehicles involved in the accident, and against H. P. Hood, Inc., as the employer of one of the drivers.[2] She appealed from the judge's rulings on the motions for directed verdicts as to all defendants.

The plaintiffs Sylvia and Jackson, who are also defendants in the Alholm action, and Albert Guidaboni, the owner of a vehicle involved in the accident, bring these appeals only with respect to the question of the liability of the defendant town. The plaintiffs alleged that the town had maintained a public nuisance in the form of a town dump on property adjoining the public highway, the smoke from which severely impaired the visibility of travelers on the highway. They further alleged that the town had been negligent in its maintenance and operation of the dump and that its negligence had resulted in the impaired visibility on the highway which caused the accident. With respect to the drivers of the other vehicles involved, the plaintiff Alholm alleged that each driver had been negligent in the operation of his vehicle in light of the prevailing conditions of visibility. The trial judge granted the town's motion for directed verdicts on the specific ground that the doctrine of municipal immunity barred recovery. The motions of the defendant operators were granted on the ground that the evidence was insufficient to support a jury finding that the plaintiffs' injuries were caused in whole or in part by the negligence of any of the individual operators. We conclude that there was no error in the allowance of the motions for directed verdicts, except as to the actions of the plaintiff Alholm against the defendants Johnson and Perrone.

1. We must view the evidence in the light most favorable to the plaintiffs. *Chase* v. *Roy*, 363 Mass. 402 (1973).

---

[2] The plaintiff Alholm thus brought actions against the town, and against the defendants H. P. Hood, Inc., Lawrence Oliver, Alfred W. Johnson, Henry D. Gray, Jr., Frederick Tanous, Robert D. Reed, John F. Sylvia, Jr., Everett R. Olson, Andrew Barrs, David L. Jackson, and David A. Perrone.

*Calderone* v. *Wright,* 360 Mass. 174 (1971). *DeAngelis* v. *Boston Elevated Ry.,* 304 Mass. 461 (1939). We first summarize the evidence with respect to the plaintiffs' claims that the town dump was a public nuisance and that the nuisance conditions were caused by the negligence of town officers, agents, or employees.

The collision occurred on April 28, 1971, about 7:30 A.M. on the eastbound portion of Route 25 in Wareham, which in that vicinity consists of a breakdown lane, two driving lanes, and a passing lane bounded by an unenclosed median strip which is almost flush with the roadway. At a distance of about 450 feet south of the accident site is located a tract of land owned by the town of Wareham upon which it operated a dump for the use of town residents.

Surface and subterranean burning had occurred at the dump periodically for ten years prior to the accident. The dump had been smoldering since March 26, 1971, on which date Robert Donovan, Director of the Southeastern Massachusetts Air Pollution Control District, an agency of the Massachusetts Department of Public Health, observed open burning at the dump, as a result of which he sent the town a notice of the violation. About a week prior to the accident, smoke was seen blowing across the highway from the dump. The dump was smoldering on April 27 and 28, and open burning of refuse in the dump was observed on the morning of the accident at 10:35 A.M. The fire was extinguished during the week following the accident by a process which involved excavation and the pouring of 1.25 million gallons of water on the area.

The collision occurred in a bank of fog and smoke in which visibility was reduced virtually to zero. A State police officer who arrived at the scene about 7:45 A.M. described visibility conditions as "like a smog, like a gray wall" and indicated that in addition to fog there was a "heavy odor of smoke irritating to the eyes." Several operators testified that they could smell smoke after the accident and that the smoke caused tearing of eyes and coughing.

However, there was also testimony that the area in and

around Wareham was covered by an extremely heavy fog about 7 A.M. on the morning of the accident. There was no breeze. Visibility one-half mile from the scene of the accident in two directions was as poor as it was at the scene of the accident shortly before and after the accident. Virtually every witness who testified as to the visibility conditions at the scene of the accident emphasized the presence of a heavy stationary fogbank. While several witnesses testified to smelling smoke at the scene, only one driver thought that he could visually distinguish smoke present in the fogbank. In addition, there was repeated testimony that visibility had improved markedly by approximately 9 A.M. after the fog lifted. There was also testimony that the terrain surrounding the accident scene was a boggy, marshy area in which fog was a relatively frequent occurrence.

We conclude that, while there was evidence from which the jury could find that the town was maintaining a public nuisance and that the town was negligent in its maintenance of the dump, there was no evidence on which a jury could rationally base a conclusion that the smoke from the dump was causally related to the accident. Therefore, we need not here consider the issues of whether the governmental immmunity doctrine precludes recovery against a municipality for personal injuries caused by a public nuisance maintained by the municipality or whether the dump was a commercial enterprise for negligence in the operation of which the town may be liable. The trial judge was correct in directing a verdict for the defendant town. The judge did not base his determination on the ground on which we proceed, but the granting of such a motion will be upheld if there is any valid ground on which the motion should have been granted.[3] *Third Nat'l Bank*

---

[3] This court has never been squarely confronted with the question whether municipalities may be held liable for injuries resulting from a public nuisance. It is well settled that a municipality is liable for injury resulting from its maintenance of a private nuisance. *Kurtigian* v. *Worcester,* 348 Mass. 284 (1965). *Wershba* v. *Lynn,* 324 Mass. 327 (1949). *Towner* v. *Melrose,* 305 Mass. 165 (1940). *Jones* v. *Great Barrington,* 273 Mass. 483 (1930). *Miles* v. *Worcester,* 154 Mass. 511 (1891). Cf. *Morash & Sons* v. *Commonwealth,* 363 Mass. 612, 616

*& Trust Co.* v. *Reiter Oldsmobile, Inc.,* 360 Mass. 871 (1972). *Greeley* v. *Zoning Bd. of Appeals of Framingham,* 350 Mass. 549 (1966). *McKinstry* v. *New York, N.H. & H.R.R.,* 338 Mass. 785 (1958).

The plaintiffs had the burden of proving that the alleged nuisance or negligence was the proximate cause of their injuries. It was incumbent on the plaintiffs to demonstrate a greater likelihood that their injuries were caused by a nuisance maintained by the defendant town or by its negligence than by some other cause for which it was not liable. *Nass* v. *Duxbury,* 327 Mass. 396, 400 (1951). "Matters that are left so doubtful that there is no preponderance either way are not proved in the legal sense." *Connell* v. *Maynard,* 322 Mass. 245, 246 (1948). See *Chase* v. *Roy,* 363 Mass. 402 (1973); *LeBlond* v. *Finnerty,* 351 Mass. 713 (1967); *Falvey* v. *Hamelburg,* 347 Mass. 430 (1964); *Jones* v. *Hayden,* 310 Mass. 90 (1941); *Ellis* v. *Ellison,* 275 Mass. 272 (1931).

The nature of the burden thus placed on the plaintiffs was most comprehensively set forth in *Bigwood* v. *Boston & N. St. Ry.,* 209 Mass. 345, 348 (1911): "By bringing their actions, the plaintiffs assumed the obligation to show that the negligence of the defendant caused their injury. This was an affirmative burden and could not be left to surmise, conjecture or imagination. There must be something amounting to proof, either by direct evidence or rational inference of probabilities from established facts. While the plaintiff is not bound to exclude every other possibility of cause for his injury except that of the negligence of the defendant, he is required to show by evidence a greater likelihood that it came from an act of negligence for which the defendant is responsible than from a cause

_____

(1973). We can discern no valid reason why municipalities should not be liable for injuries resulting from their maintenance of public nuisances, subject to the well established tort principles regarding the special nature of the injuries for which an action in public nuisance will lie. See W. Prosser, Torts § 88 (4th ed. 1971). However, we need not decide that question here.

for which the defendant is not liable. If on all the evidence it is just as reasonable to suppose that the cause is one for which no liability would attach to the defendant as one for which the defendant is liable, then a plaintiff fails to make out his case." The same burden is applicable to causes of action predicated on nuisance.

The evidence in these cases regarding the presence of an extremely heavy fog was overwhelming. There was no evidence regarding the amount of smoke which was emanating from the dump at the time of the accident or the amount of smoke which may have reached the highway 450 feet away.

A motion for a directed verdict can properly be granted "only where, construing the evidence most favorably to the plaintiff, it is still insufficient to support a verdict in his favor." *DiMarzo* v. *S. & P. Realty Corp.*, 364 Mass. 510, 514 (1974). The test to be applied in determining whether there was an issue of fact for decision by the jury is whether "upon any reasonable view of the evidence, there is found a combination of facts from which a rational inference may be drawn in favor of the plaintiffs." *Chase* v. *Roy*, 363 Mass. 402, 404 (1973). *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972). *Calderone* v. *Wright*, 360 Mass. 174 (1971). *Willis* v. *Gurry*, 331 Mass. 19, 21 (1954). However, the evidence must contain facts from which reasonable inferences based on probabilities rather than possibilities may be drawn. *Knox* v. *Lamoureaux*, 338 Mass. 167, 169 (1958). *Marcus* v. *Griggs, Inc.*, 334 Mass. 139 (1956). *Bigwood* v. *Boston & N. St. Ry.*, 209 Mass. 345, 348 (1911). And the evidence must be sufficiently concrete to remove any inference which the jury might draw from it from the realm of mere speculation and conjecture. *Zezuski* v. *Jenny Mfg. Co.*, 363 Mass. 324, 328 (1973). *Dolan* v. *Suffolk Franklin Sav. Bank*, 355 Mass. 665, 670 (1969). *Knox* v. *Lamoureaux*, 338 Mass. 167, 169-170 (1958).

We conclude that there was no evidence on which a jury could base a rational inference that the dump smoke was "an operative and potent factor" in causing the accident. See *Wallace* v. *Ludwig*, 292 Mass. 251, 254 (1935). In

construing the evidence most favorably to the plaintiffs, we assume that some amount of smoke was present on the roadway in addition to the fog. However, the lack of evidence regarding the amount of smoke which may have been on the roadway leaves the jury without any rational basis on which they could conclude that smoke was a factor in producing the drastically reduced visibility conditions or that the fog alone would not have resulted in an identical reduction of visibility. Since any inference as to the role of the smoke in causing the accident would be based solely on speculation and conjecture, the granting of the defendant town's motions for directed verdicts was proper.

2. We now examine the evidence regarding the negligence of the defendant operators, construed in the light most favorable to the plaintiff Alholm, who was the only person to pursue this appeal against the operators involved in the collision. As to each of the defendants there was evidence to warrant an inference of negligence in the speed and manner in which they operated their vehicles under the conditions of poor visibility. See *Chase* v. *Roy,* 363 Mass. 402, 406 (1973) (speed twenty-five miles an hour in fog); *Texeira* v. *Sundquist,* 288 Mass. 93, 94 (1934) (speed twenty-two miles an hour in fog); *Renaud* v. *New England Transp. Co.,* 286 Mass. 39, 44 (1934) (speed thirty to thirty-five miles an hour in fogbank). However, except as to the defendants Johnson and Perrone, there was no evidence to warrant a finding that there was contact between any of the defendants' vehicles and the person of, or the vehicle occupied by, the plaintiff Alholm. The collisions which occurred prior to the arrival at the scene of the vehicle in which she was a passenger undoubtedly resulted in the major roadway obstruction which was a contributing factor to the plaintiff Alholm's injuries. However, this showing does not suffice to demonstrate the requisite causal relationship between the negligence of individual drivers and the plaintiff's injuries. It follows, therefore, that the trial judge was correct in directing ver-

dicts for the defendants H. P. Hood, Inc., Oliver, Gray, Tanous, Reed, Sylvia, Olson, Barrs, and Jackson.

In reaching this conclusion we are guided by the general principles of causation set out, *infra,* as to the action against the town of Wareham, and more particularly guided by analysis which we have applied as to causation in similar cases of multivehicle accidents. See *Chase* v. *Roy,* 363 Mass. 402 (1973); *LeBlond* v. *Finnerty,* 351 Mass. 713 (1967); *Falvey* v. *Hamelburg,* 347 Mass. 430 (1964); *Wallace* v. *Ludwig,* 292 Mass. 251 (1935).

The state of proof as to the operators Johnson and Perrone was substantially different because of reasonable inferences which could be drawn from the testimony, when considered together, of the witnesses Alholm, Collette, Johnson and Perrone.

Albert F. Collette, Jr., the brother of the plaintiff Alholm, was operating a pale blue 1964 Buick automobile. His sister was in the front seat beside him. He entered the area of poor visibility at a speed of thirty to thirty-five miles an hour in the passing lane. His visibility decreased as he proceeded. He braked down to a speed of fifteen to twenty miles an hour but did not slow down further or stop because he was afraid of being struck in the rear. While proceeding at this decreased speed, he saw the lights of a car in front of him in the same lane about fifteen feet ahead of him. He applied his brakes but was unable to avoid colliding with the vehicle ahead of him. Neither he nor his sister was injured by this impact. Several seconds later the Collette vehicle was struck from the rear. Collette was thrown into the passenger side of the front seat, and his sister Mary Alholm was thrown out of the vehicle by the force of this impact. Collette left the car by the passenger side, found his sister on the pavement, and carried her to a place of safety.

The defendant Johnson was operating a 1968 Chevrolet Malibu automobile in the center lane at a speed of forty-five to fifty miles an hour when he entered the area of low visibility. His visibility had decreased to about a car

length when he saw vehicles blocking the road ahead of him, one of which was a Ford truck and the other of which was a Buick. He struck both vehicles, first hitting the truck and then the Buick. He was unable to estimate his speed at impact. With the use of a photographic exhibit, he identified the Buick which he had struck as the Collette vehicle.

The defendant David A. Perrone was operating a 1971 Ford Maverick automobile in the center lane at a speed of approximately sixty miles an hour. He entered the fog-bank at a speed of approximately fifty miles an hour. After proceeding into this area for about 100 feet, he removed his foot from the accelerator and was about to apply his brakes when he collided with a vehicle which was perpen-dicular to his lane. His speed at impact was forty to forty-five miles an hour. He heard no noises and felt no further impacts after colliding with this vehicle. Four or five days after the accident, Perrone visited Alholm in the hospital. During the course of their conversation, he inquired as to the type of vehicle in which she had been riding. In re-sponse to her reply that the car was a powder blue Buick, Perrone stated that the last thing he remembered prior to impact was seeing a blue Buick ahead of him.

In sum, with the exception of the defendant Johnson, who testified to having struck the car in which the plain-tiff was a passenger, and the defendant Perrone, who communicated to the plaintiff Alholm that the last thing he remembered prior to impact was seeing a blue Buick, there was insufficient evidence of a causal relationship between the negligence of any individual driver and the injuries suffered by Alholm.

The defendant Johnson stresses that he testified that the Collette vehicle was empty when he collided with it and that he searched the area around the vehicle and found no one there. The jury are not required to believe this testimony, and the fact that the jury could find that the Johnson-Collette impact was not the one which caused Alholm's injuries does not mean that they could not find otherwise. The evidence presents issues susceptible of rea-

soned consideration and resolution by the jury, including a permissible determination of the issue as to which of the two defendants, Johnson or Perrone, was legally responsible to Alholm. The jury, of course, might also permissibly conclude that neither defendant was responsible.

We do not imply that evidence of causal relationship need in every case be as direct as the evidence here relating to Johnson and Perrone. Sufficient evidence could certainly arise inferentially in many different ways. Nevertheless, except for the cases against Johnson and Perrone, the confusion surrounding the sequence of events which transpired prior to Alholm's injuries is too attenuated a basis for jury consideration of the causal relationship.

3. There was no error in the trial judge's exclusion of evidence. Alholm offered to prove the position of all the cars after the fog had lifted through the testimony of Chester W. Campbell, a State police corporal who arrived at the scene of the accident shortly after it occurred to aid another State trooper in closing the road. The fog lifted approximately one hour after Corporal Campbell arrived at the scene, and at that time he conducted an investigation of the accident which included the preparation of a diagram. The trial judge excluded both the diagram made after the fog lifted and testimony by Corporal Campbell as to his observations of the relative positions of the vehicles at that time. The witness was unable to state whether any of the vehicles had been moved during the interval between the accident and the making of the diagram. There was other testimony that the relative positions of the vehicles had shifted substantially from the time of initial impact to the time when the fog lifted. The judge concluded that the positions of the vehicles after the fog lifted was too remote from the actual positions of vehicles at the time of impact to be of aid to the jury in reconstructing the series of events which occurred. Such a determination is within the sound discretion of the trial judge. *Charles L. Hazelton & Son* v. *Teel,* 349 Mass. 617 (1965). *Murray* v. *Foster,* 343 Mass. 655 (1962). *Howe* v. *Boston,* 311 Mass. 278 (1942). *Everson* v. *Casualty Co.*

*of America*, 208 Mass. 214 (1911). We cannot say that as matter of law the trial judge was incorrect in excluding this evidence.

4. The directed verdicts for the town of Wareham and the defendants H. P. Hood, Inc., Oliver, Gray, Tanous, Reed, Sylvia, Olson, Barrs, and Jackson must be upheld. The directed verdicts for the defendants Johnson and Perrone must be reversed and the actions against them by the plaintiff Alholm remanded for new trial.

*So ordered.*