RAYMOND P. CONNERTY *vs.* METROPOLITAN DISTRICT
COMMISSION.

Norfolk. April 7, 1986. — August 5, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Civil,* Complaint, Motion to dismiss. *Actionable Tort. Metropolitan District Commission. Nuisance. Massachusetts Tort Claims Act. Governmental Immunity. Shellfish. License.*

A complaint alleging that the Metropolitan District Commission discharged raw sewage into Quincy Bay and Boston harbor while it was making repairs to a sewage treatment plant, and that, as a result, the plaintiff, a licensed master clam digger, was prevented from harvesting shellfish in Boston harbor for about two weeks, failed to state a claim on which relief could be granted based on either G. L. c. 130, §§ 25, 27, prohibiting the discharge into coastal waters of sewage or other substances which might be injurious to the public health or tend to contaminate shellfish areas, G. L. c. 92, § 1, requiring the commission to maintain and operate a sewage disposal system, G. L. c. 91, §§ 59, 59A, prohibiting the discharge of petroleum products or "other matter or refuse" into tidal waters, or G. L. c. 30, § 61, requiring the commission to use "all practicable means . . . to minimize damage to the environment." [143-146]

A complaint alleging that the Metropolitan District Commission discharged raw sewage into Quincy Bay and Boston harbor while it was making repairs to a sewage treatment plant, and that, as a result, the plaintiff, a licensed master clam digger, was prevented from harvesting shellfish in Boston harbor for about two weeks, failed to state a claim on which relief could be granted based on a common law nuisance theory. [147-150] WILKINS, J., with whom NOLAN, J., joins, concurring.

CIVIL ACTION commenced in the Superior Court Department on October 29, 1984.

A motion to dismiss was heard by *Andrew Gill Meyer,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Rona W. Goodman* for the plaintiff.

*Jacqueline L. Allen,* Assistant Attorney General, for the defendant.

HENNESSEY, C.J. The plaintiff, a licensed master clam digger, brought an action on his own behalf and on behalf of other licensed master clam diggers[1] for damages to his business allegedly caused by the discharging of raw sewage by the Metropolitan District Commission (MDC) into Quincy Bay and Boston harbor. The plaintiff's claims for relief were based on the MDC's alleged violations of several environmental statutes, and common law nuisance.[2] A Superior Court judge allowed, without opinion, the MDC's motion to dismiss on the ground that the complaint failed to state a claim on which relief could be granted. See Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The plaintiff appealed. We transferred the case here on our own motion. We conclude that the complaint was properly dismissed.

We summarize the facts alleged in the plaintiff's complaint. The plaintiff and the other members of the class he purports to represent are licensed master diggers engaged in the business of harvesting and selling clams obtained from Boston harbor and Quincy Bay.[3] The MDC is an agency of the Commonwealth and, pursuant to G. L. c. 92, § 1 (1984 ed.), repealed by St. 1984, c. 372, § 30 (effective July 1, 1985), was charged with the responsibility to "construct, maintain and operate . . . a system of sewage disposal."[4] One of the sewage treatment and disposal facilities operated by the MDC is located on Nut Island in Boston harbor.

---

[1] At the time of appeal the class had not been certified.

[2] The plaintiff's complaint alleged compliance with the presentment requirements of G. L. c. 258, § 4 (1984 ed.), which are a condition precedent to maintaining an action under the Massachusetts Tort Claims Act. In its answer, the MDC did not challenge this allegation. See *Vasys* v. *Metropolitan Dist. Comm'n*, 387 Mass. 51, 55-57 (1982). But see also our conclusion, in part 2 of this opinion, that c. 258 has no application in this case.

[3] A *master* digger is licensed to dig shellfish from certain areas and to process them for consumption as food, whereas a digger's permit authorizes the holder to dig shellfish for the holder of a master digger's permit. See G. L. c. 130, § 75 (1984 ed.); 322 Code Mass. Regs. § 7.00 (1983).

[4] The responsibility for operating a system of sewage disposal was transferred from the MDC to the Massachusetts Water Resources Authority by St. 1984, c. 372.

On November 11, 1983, the MDC announced through The Patriot Ledger newspaper that it intended to suspend operation of the chlorination facilities at the Nut Island wastewater treatment plant for four days to make repairs. Subsequently, on November 12, the MDC announced that the interruption in the operation of the chlorination facilities would render the fish and shellfish in Quincy Bay inedible. On or about November 16, 1983, the MDC began discharging raw sewage from the Nut Island facility into Quincy Bay. As a result of these MDC actions, the division of marine fisheries closed all Boston harbor shellfish flats from November 15 through December 1, 1983. The complaint alleges that, at all times during the period Boston harbor was closed for shellfish harvesting, the plaintiff was ready, willing, and able to harvest shellfish in that area. The plaintiff alleges that he and the other clam diggers would have realized a net profit of $22,000 if they had been permitted to harvest shellfish from Boston harbor and Quincy Bay during the period shellfish harvesting was prohibited.

The complaint claims recovery either under the terms of several statutes, or in common law nuisance. First, the plaintiff alleges that the discharge of raw sewage by the MDC violated G. L. c. 130, § 25 (1984 ed.), which prohibits the discharge into coastal waters of sewage or other substances which might be injurious to the public health or tend to contaminate any shellfish areas, rendering the perpetrator liable in treble damages for the violation pursuant to G. L. c. 130, § 27 (1984 ed.). In addition, the plaintiff alleges that the MDC's conduct constituted a violation of its duty pursuant to G. L. c. 92, § 1, to maintain and operate a sewage disposal system to protect the health and natural resources of the Commonwealth. The plaintiff alleges that the MDC's conduct was a violation of G. L. c. 91, §§ 59, 59A (1984 ed.), which prohibit the discharge of petroleum products or "other matter or refuse" into tidal waters. Further, the plaintiff alleges that the MDC, by its conduct concerning the Nut Island facility, failed to meet its obligations pursuant to G. L. c. 30, § 61 (1984 ed.), to use "all practicable means and measures to minimize damage to the environment," such as water pollution and improper sewage

disposal. According to the complaint, the MDC could have avoided causing the alleged environmental damage through bypass pumping around work areas, but chose not to do so because of the cost. Finally, the plaintiff alleges that the MDC's conduct constituted a substantial, unreasonable interference with the private rights of the clam diggers to harvest shellfish, that the MDC knew the discharge of raw sewage would pollute shellfish in Boston harbor, and that the MDC's intentional and knowing discharge of raw sewage created a nuisance causing injury to the clam diggers.

The plaintiff contends that the dismissal of his complaint was error. " ' [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Furthermore, the allegations of the complaint, as well as such inferences as may be drawn . . . in the plaintiff's favor, are to be taken as true." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). *Appleton* v. *Hudson*, 397 Mass. 812, 814-815 (1986). *Capazzoli* v. *Holzwasser*, 397 Mass. 158, 160 (1986). These generous principles govern our analysis of whether any of the alternate theories of recovery advanced in the plaintiff's complaint would entitle the clam diggers to recover, assuming the facts alleged are true.

1. *Statutory Claims.*

The plaintiff in his allegations relies upon the language in certain statutes. He argues that, by reason of these statutes, the MDC owed him and other members of the class he purports to represent a special duty of care beyond the duty owed the public. *Appleton* v. *Hudson, supra* at 815. *Nickerson* v. *Commonwealth*, 397 Mass. 476, 478 (1986). *Ribeiro* v. *Granby*, 395 Mass. 608, 613 (1985). *Dinsky* v. *Framingham*, 386 Mass. 801, 810 (1982). The plaintiff contends that the requisite special duty is established by the various environmental statutes prohibiting pollution of tidal waters and requiring the Commonwealth to refrain from polluting such waters, and by statutes providing for the licensing of master clam diggers. We do not agree with this contention.

Unlike *Irwin* v. *Ware*, 392 Mass. 745, 755-763 (1984), we discern here no legislative intent that any identifiable subclass should have rights in tort against the Commonwealth. See *Appleton* v. *Hudson, supra* at 816. *Nickerson* v. *Commonwealth, supra* at 478. *Ribeiro* v. *Granby, supra.* The statutes in question establish the MDC's duties to the public but they do not establish a special duty to the plaintiff beyond that owed to the public.

First, we consider any duty created by G. L. c. 130, §§ 25 and 27 (1984 ed.). Section 25 of G. L. c. 130 prohibits the "discharge into the coastal waters, or the tributaries of such waters, of sewage or any other substance which . . . might tend to contaminate any shellfish areas or shellfish therein which may be determined . . . to be of commercial value." Criminal and tort liability for violations of § 25 are established in § 27. Section 27 imposes criminal penalties of fines or imprisonment for persons violating § 25 and provides that tort liability for damages resulting from § 25 violations runs in favor of the city or town in which the contaminated waters are located, or to the Commonwealth. The section also provides that persons causing damage to private fishery resources in the Commonwealth shall be liable in tort to the owners or lessees of any private rights in the fisheries.

Section 27 creates no mechanism for private individuals or members of the public to enforce the criminal prohibitions of § 25. The tort liability running to the owners or lessees of private rights in private fishery resources likewise offers no avenue of recovery for the plaintiff. As the holder of a license to dig clams in public waters, the plaintiff, like other similarly situated clam diggers, is not an owner or lessee of any private interest in a fishery resource.[5]

---

[5] The plaintiff asserts that he and other clam diggers similarly situated have a right akin to a property interest in being able to fish in Boston harbor and Quincy Bay. This right, the plaintiff contends, derives from the ancient right to dig on clam flats of the Commonwealth. See, e.g., *Opinion of the Justices*, 365 Mass. 681, 687 (1974); *Barry* v. *Grela*, 372 Mass. 278, 279 (1977). While access to fishing in the Commonwealth's waters is a protected right, the Commonwealth has authority to regulate fishing. Thus, the terms of the license granted the plaintiff under G. L. c. 130, rather than any

The license held by the plaintiff possesses none of the attributes of a property right. There is no language indicating a legislative intent to establish a remedy in tort for persons in the plaintiff's position. See *White Dove, Inc.* v. *Director of the Div. of Marine Fisheries*, 380 Mass. 471, 478 (1980). See also *Lindsey* v. *Massios*, 372 Mass. 79, 85 (1977); *Melley* v. *Gillette Corp.*, 19 Mass. App. Ct. 511, 513 (1985), *S.C.* 397 Mass. 1004 (1986); *County of Middlesex* v. *Newton*, 13 Mass. App. Ct. 538, 544 (1982). See also G. L. c. 92, § 1, which assigned to the MDC responsibility for operating a sewage disposal system that protects the health and natural resources of the Commonwealth, and similarly provides no mechanism for enforcement and no right of action for one in the plaintiff's circumstances.

Similarly, we conclude that G. L. c. 91, §§ 59 and 59A, impose no duty on the MDC toward the plaintiff. Section 59 makes punishable, by a fine, the discharging of any oil or petroleum product, "or any other matter or refuse" which results in the pollution or contamination of any tidal waters or flats. Further, the section provides that "this section shall be enforced by the department of public safety and by all other officers authorized to make arrests." The section makes no provision for private enforcement, and we will not imply a private tort remedy for violation of the section. Section 59A provides that the same activities rendered punishable by § 59 will render the negligent perpetrator liable in tort to persons whose property

---

ancient right to take fish from the Commonwealth's waters, define the interest the plaintiff has in harvesting clams from Boston harbor or Quincy Bay. A master digger's license is a nontransferable license to fish or to clam in a limited area and can be revoked at will by the licensing authority. See G. L. c. 130, § 2. See also *Gray* v. *Handy*, 349 Mass. 438, 442 (1965); *Spencer* v. *Rabidou*, 340 Mass. 91, 93 (1959). While we have found several cases where fishing licenses have been determined to create property rights, the licenses at issue in those cases possessed some attribute normally associated with interests in property such as transferability, irrevocability, or a definite and fixed term. See, e.g., *Boston, Cape Cod & N.Y. Canal Co.* v. *Henshaw*, 229 Mass. 185, 189 (1918); *Todd* v. *United States*, 292 F.2d 841, 843 (Ct. Cl. 1961); *Jackson* v. *United States*, 103 F. Supp. 1019 (Ct. Cl. 1952). The clam digging licenses that form the basis of the plaintiff's claim here bear no such attributes.

is damaged by the activity. As the license the plaintiff holds creates no property interest in the waters polluted or in the unharvested shellfish contaminated by the MDC's conduct, he is owed no duty, however, under this section.

Finally, the plaintiff alleges that the provisions of G. L. c. 30, § 61, which require all commissions and agencies of the Commonwealth to use all practicable means to minimize damage to the environment resulting from all activities they conduct provides a basis for his claim. " [D]amage to the environment" is defined as any significant destruction, damage, or impairment to any of the natural resources of the environment and includes, among other things, water pollution, improper sewage disposal, and destruction of marine resources. These requirements are duties owed to the public at large, not to the plaintiff especially. This section precedes several sections of the statute which set out the environmental review procedures to which all activities of agencies of the Commonwealth are subject, but makes no provision for enforcement. Further, the existence of elaborate administrative mechanisms for review of the environmental impact of publicly funded projects tends to negate any argument that a private remedy in money damages should be inferred.

The existence of G. L. c. 214, § 7A (1984 ed.), supports the conclusion we reach, that the Legislature has not seen fit to provide a remedy such as the plaintiff seeks here. Section 7A establishes a mechanism whereby ten or more persons domiciled in the Commonwealth may seek equitable or declaratory relief where environmental damage is about to occur or is occurring. The plaintiff chose not to avail himself of this remedy in advance of the MDC action complained of here, although, by his own admission, he was notified of the MDC's plans to suspend the operation of the Nut Island facility in advance of the date the plant was closed for repairs.[6]

[6] Because we conclude that the MDC owed no duty to the plaintiff under the environmental statutes on which the plaintiff relies, we need not decide whether the MDC's decision regarding the manner of repairing sewage treatment facilities is a discretionary function rendering the MDC immune from liability for acts relating to such activity pursuant to G. L. c. 258, § 10 (b) (1984 ed.). See Whitney v. Worcester, 373 Mass. 208, 217 (1977)

## 2. *Nuisance Claim.*

In addition to alleging a right to recover pursuant to the various environmental statutes discussed in the preceding section of this opinion, the plaintiff's complaint also asserts a right of recovery under common law nuisance principles. We decline to recognize such a right in the circumstances shown here.

A private nuisance action is the remedy for an invasion of a property right. To bring a private nuisance action, a plaintiff must have some interest in the property affected. Thus, tenants, holders of easements and profits, as well as owners of fee interests have been permitted to recover in nuisance actions. The prevailing rule is, however, that licensees, mere occupants, or lodgers have no interest in the property affected and cannot maintain an action in private nuisance. W. Prosser & W. Keeton, Torts § 87, at 621 (5th ed. 1984). Comment, Torts-Nuisance: Interests Which Will Sustain a Nuisance Action, 20 Ark. L. Rev. 407, 408-409 (1967). We have concluded, see note 5, *supra*, that the plaintiff and other members of the class he purports to represent have no property interest in the polluted waters, but a mere revocable right to harvest clams. The plaintiff's status as a licensee does not entitle him to recover under a private nuisance theory. Thus, the plaintiff's reliance on cases where owners, tenants, holders of profits à prendre, and licensees who have held interests under contract or statute for definite terms have been compensated for interference with their exercise of rights on real property is not well-founded. See, e.g., *Sherman* v. *Fall River Iron Works Co.*, 2 Allen 524,

---

(recognizing that government entity is not liable for negligence in the planning of sewers but may be liable for negligence in their construction and maintenance); *Lobster Pot of Lowell, Inc.* v. *Lowell,* 333 Mass. 31, 33 (1955) (municipality not responsible for damages accruing through a defect or inadequacy in the design of its sewer system, but is liable for negligent construction, maintenance, or operation of the system); *Allen* v. *Boston,* 159 Mass. 324, 336-337 (1893) (duty to keep sewer in repair rests on the municipality which cannot be excused from liability for failing to make the sewer safe). See also *Doherty* v. *Belmont,* 396 Mass. 271, 276 (1985) (any negligence in performing, or failing to perform, the ministerial task of maintenance does not rise to the level of public policy or planning protected by § 10 [*b*]).

526 (1861) (tenant); *United Elec. Light Co.* v. *Deliso Constr. Co.*, 315 Mass. 313, 321 (1943) (holder of permit); *H. Sacks & Sons* v. *Metropolitan Dist. Comm'n*, 20 Mass. App. Ct. 45, 47 (1985), *S.C.* 397 Mass. 1007, 1008 (1986) (tenant); *Boston, Cape Cod & N.Y. Canal Co.* v. *Henshaw*, 229 Mass. 185, 189 (1918) (license for term of years); *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 619 (1973) (owner).[7]

A nuisance is public when it interferes with the exercise of a public right by directly encroaching on public property or by causing a common injury. To maintain a public nuisance action, a plaintiff must show that the public nuisance has caused some special injury of a direct and substantial character other than that which the general public shares. *Stop & Shop Cos.* v. *Fisher*, 387 Mass. 889, 894, 899 (1983). W. Prosser & W. Keeton, *supra* at § 90, at 650. If such a special injury has occurred, a private plaintiff may recover for injuries caused by a public nuisance even though the injury did not involve any interference with the use of land in which the plaintiff had a property interest. See *Stop & Shop Cos.* v. *Fisher, supra* at 894-895. Without such a particularized injury, however, the remedy for a public nuisance must be sought by public authorities. W. Prosser & W. Keeton, *supra* at § 90, at 646 & n.41.

In the instant case the plaintiff has alleged facts sufficient to indicate he has suffered harm more particularized than the harm suffered by the community at large. Although the plaintiff has not suffered harm to any interest in property, he has suffered harm to his livelihood. As a licensed clam digger who apparently relies on the ability to harvest clams from the waters the MDC polluted while it repaired the Nut Island sewage

---

[7] The recent case of *H. Sacks & Sons* v. *Metropolitan Dist. Comm'n*, 397 Mass. at 1008, in which this court recognized a tenant's right to recover against the Commonwealth for damage to personal property in a private nuisance action, does not compel a different result in the instant case. Here, the plaintiff has no interest in real property which would permit him to maintain a private nuisance action and, as we have already stated, the right to dig clams in Boston harbor and Quincy Bay invests the plaintiff with no property interest, injury to which can be remedied through a private nuisance action.

treatment facility, for at least part of his income, he was deprived of income by the pollution of the waters, while the ordinary citizen was merely deprived of a cleaner harbor for a period of time. W. Prosser & W. Keeton, *supra*.

The issue before us is whether we shall recognize a common law claim of the plaintiff here. We assume for purposes of discussion that, if the defendant were other than a governmental entity, the plaintiff's allegations would sufficiently state a case in public nuisance. We conclude, first of all, that the plaintiff is not aided by any provision of the Massachusetts Tort Claims Act, G. L. c. 258, because that act is not applicable in this case. Section 10 (*c*) of c. 258 provides in substance that the statute shall not apply to intentional torts.[8] Public nuisance liability can be based upon conduct that is intentional, and unreasonable or negligent, reckless or ultrahazardous (*Stop & Shop Cos.* v. *Fisher*, 387 Mass. 889, 891 n.2 [1983]), but it is clear that the plaintiff has alleged an intentional nuisance. Additionally, we note that c. 258 applies only to "injury or loss of property or personal injury or death." See § 2 of the act. For that reason, also, it is clear that c. 258 has no application in this case.

We observe, in particular, that the plaintiff can claim no assistance from the language of § 2 of c. 258 that " [p]ublic employers shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ." Whatever the meaning of that provision, it has no application here. Thus, without reference to the provisions of c. 258, we must examine common law principles to determine

---

[8] Section 10 (*c*) of G. L. c. 258 excepts from the coverage of the Tort Claims Act "any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations." We construe the language of § 10 (*c*) as excluding *all* intentional torts from the coverage of the Massachusetts Tort Claims Act. The use of the word "including" in § 10 (*c*) indicates that the enumeration of intentional torts in the section is not an all-inclusive list. See 2A C. Sands, Sutherland Statutory Construction § 47.23, at 194 (4th ed. 1984).

whether an agency of the Commonwealth is liable in public nuisance to persons like the plaintiff. See *Morash & Sons* v. *Commonwealth, supra* at 616-617; *H. Sacks & Sons* v. *Metropolitan Dist. Comm'n,* 20 Mass. App. Ct. at 46-47. Prior to the statutory waiver of immunity accomplished by the enactment of G. L. c. 258, the Commonwealth and its political subdivisions were liable in private nuisance to the holders of interests in real property. *Morash & Sons* v. *Commonwealth, supra* at 616. *H. Sacks & Sons* v. *Metropolitan Dist. Comm'n,* 20 Mass. App. Ct. at 47-48. In no case in this jurisdiction, however, has recovery in public nuisance been allowed against any public entity. See *Huff* v. *Holyoke,* 386 Mass. 582, 583-584 (1982); *Alholm* v. *Wareham,* 371 Mass. 621, 625 n.3 (1976); *Kerlinsky* v. *Commonwealth,* 7 Mass. App. Ct. 910, 910 (1979). See also Glannon & Gordon, Practice and Procedure Under the Massachusetts Tort Claims Act (G. L. c. 258), 71 Mass. L. Rev. 61, 78-79 (1986). In all the cases where the Commonwealth or another public entity has been held liable in nuisance, the plaintiff proved a private nuisance. In the circumstances alleged here, we decline to establish the Commonwealth's liability for conduct resulting in a public nuisance.

In light of the result and reasoning we have reached we need not consider the arguments of the MDC that any common law claim here is preempted by certain Federal statutes.

*Judgment affirmed.*


WILKINS, J. (concurring, with whom Nolan, J., joins). The court has glorified the plaintiff's rights and, as a result, has obliged itself to consider questions concerning public nuisance it need not have reached. Simply put, the plaintiff has no special rights on which he could base a valid public nuisance claim or a claim of recovery for any statutory violation. The plaintiff had a revocable permit to take shellfish from a contaminated shellfish area. G. L. c. 130, § 75 (1984 ed.). The director of the division of marine fisheries could revoke that permit (*id.*), and in effect he did just that from November 15, 1983,

until December 1, 1983. Once all permits to take shellfish from the contaminated areas were revoked, the plaintiff had no valid claim based on public nuisance (or on any other theory) because neither he nor anyone else had any right to take shellfish from the contaminated area.

The court, therefore, should not have concluded that the plaintiff would have had a claim in public nuisance had the defendant been a nongovernmental entity. I find it particularly unfortunate that the court decided, unnecessarily, that some public nuisance claims are governed by G. L. c. 258 (1984 ed.) and that others are not.