Garsh, J.
The City of Boston ("City”) has moved, under Mass.R.Civ.P. 12(b)(6), for dismissal of Counts I, II, III and V of plaintiffs amended complaint. Those counts purport to state claims by the plaintiff, Linda Rezendes-Walsh, against the City of Boston for constructive taking, unreasonable and capricious application of zoning regulations, civil conspiracy, and declaratory judgment. Each is related to the propriety of the classification of the district in which plaintiffs land is situated as “Open-Space Recreational.” For the reasons stated below, the City of Boston’s motion to dismiss these counts is allowed.
BACKGROUND
The plaintiff owned real property in Boston, Massachusetts, from May 21, 1992 to May 10, 1995. On August 18, 1993, the City, acting by and through the Zoning Commission (“Commission”), changed the zoning classification of the zoning district in which the plaintiffs property was located from “Residential and Local Retail Business District” to “Open-Space Recreational District.”
After the reclassification came to the attention of the Boston Redevelopment Authorily (“BRA”), BRA, by letter dated June 29, 1994, informed the City’s Parks and Recreation Department that the land had been incorrectly identified and mapped. The BRA also advised that it intended to petition the Commission to change the zoning classification and map accordingly.
On May 10, 1995, before any such reclassification took place, the City issued and recorded an Order of Taking pursuant to a vote of the City’s Public Facilities Department. On June 6, 1995, plaintiff filed this action against the City for damages arising from that taking. The original claim is now Count IV of the amended complaint, which the City does not seek to dismiss. The amended complaint also added the counts at issue.
DISCUSSION
I. Alleged Impropriety of the Zoning Commission’s Decision
The counts of the amended complaint alleging that the reclassification resulted in a constructive taking (Count I) and that it was a result of unreasonable and capricious application of zoning regulations (Count II) and seeking a declaration as to the invalidity of the 1993 zoning amendment (CountV) must be dismissed because St. 1987, c.371, §2 provides the exclusive remedy for persons aggrieved by decisions of the Commission which change a zoning classification. That statute provides, in relevant part:
Any persons aggrieved by a decision of the zoning commission approving a zoning map amendment or a zoning regulation or amendment thereof, or by any procedural defect therein . . . may appeal such decision to the superior court... or the land court; provided, however, that such appeal is filed in said court within thirty days after such decision became effective in accordance with the provisions of section three.[2] Theforegoing remedy shall he exclusive; but the parties shall have all rights of appeal and exception as in other equity cases.
St. 1987, c.371, §2 (emphasis added), inserting §10A into St. 1956, c.665.
The language of the statute explicitly states that §10A shall be the exclusive remedy for the type of zoning grievance at issue here.[3] Plaintiff waited almost two years to challenge the zoning map amendment affecting her property. The mandatory language of St. 1987, c.371 requires dismissal of her late challenge.
Plaintiff fares no better with her argument that Count V of the amended complaint is not an action under §10A of St. 1956, c.665, but is instead an action for declaratoiy judgment under G.L.c. 231, § 1. Where, as here, there has been a formal decision of the Commission, a plaintiff cannot avoid the requirements of §10A simply by “framing [the] challenge as a request for declaratory judgment.” Colangelo v. Board of Appeals of Lexington, 407 Mass. 242, 247 (1990) (G.L.c. 40A, §7 cannot be subverted by the expedient of a declaratory judgment action).
II. Conspiracy
Count III of the amended complaint seeks damages as a result of the City’s conspiring to depress the value of the plaintiffs property at a time when it knew or should have known that the land was to be taken by eminent domain. If this is a claim for “injury or loss of property” caused by the “wrongful act or omission of any public employee while acting within the scope if his office or employment,” G.L.c. 258, §2, then it is barred by §10(c) of the Tort Claims Act because, under that statute, the City is not liable for “any claim arising out of an intentional tort. . .”§ 10(c) enumerates several intentional torts; conspiracy is not among them. The list is not, however, exclusive. The Supreme Judicial Court has expressly rejected plaintiffs argument to the contrary. Connerty v. Metropolital District Comm’n., 398 Mass. 140, 149, n. 8 (1986) (“We construe the language of § 10(c) as excluding all intentional torts from the coverage of the Massachusetts *194 Tort Claims Act. The use of the word ‘including’ in § 10(c) indicates that the enumeration of intentional torts in the section is not an all-inclusive list.’’) (emphasis in original).
Plaintiff is correct, however, that its claim is not one for “injury or loss of properly or personal injury” within the meaning of that statute. Connerty v. Metropolitan District Comm’n., 398 Mass. at 149 (c. 258 has no application to wrongful discharge of raw sewage causing economic harm to clam diggers). Nevertheless, it does not follow that the plaintiff is thereby permitted to sue the City for an intentional tort. “(T]he Act simply removed the defense of immunity in certain tort actions against . . . municipalities ...” Dinsky v. Framingham, 386 Mass. 801, 804 (1982). Because the Legislature has not abrogated immunity for intentional torts, such as conspiracy, the plaintiff may not bring such an action against the City.[4] Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 285 (1985) (“Consistent with the common law principles of governmental immunity which preceded the Massachusetts Tort Claims Act, we conclude that public employees retain their immunity from suits arising from intentional torts”).
Plaintiffs argument that Count III, while labeled “conspiracy,” actually sounds in negligence does not save it from dismissal.[5] A public employer may be liable for negligence “to the same extent as a private individual under like circumstances.” G.L.c. 258, §2. The Tort Claims Act did not create any new theory of liability. Kromhout v. Commonwealth, 398 Mass. 687, 692 (1986). The claim that the City’s negligence had the effect of depressing the value of plaintiffs property may not be maintained because, in this Commonwealth, when a defendant negligently causes economic loss, but does not cause harm to either the person or property of the plaintiff, the plaintiff may not recover for purely economic losses. Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305 (1993); Stop & Shop Cos. v. Fisher, 387 Mass. 889, 893-894 (1983). In this context, any other result would mean that any negligent failure by a public employer to carry out a clear statutoiy duty[6] would enable an aggrieved party to sue in negligence rather than follow the appeal procedures and time limitations set out in numerous statutes. The plaintiff may not avoid the impact of St. 1987, c. 371 by labeling her challenge to the zoning classification as negligence.
ORDER
For the foregoing reasons, it is ORDERED that the City of Boston’s Motion to Dismiss is hereby ALLOWED.

“Section three” refers to St. 1956, c. 665, §3, Boston’s zoning enabling act, which sets forth the procedure for adopting and amending zoning regulations.

Moreover, nothing in the amended complaint alleges any defect in the type of notice required to be given by the governing statute, which might be alleged to provide grounds for equitable relief. Under the Enabling Act, the Commission must give notice and hold a public hearing with respect to any regulation or amendment to be passed. Notice of the hearing must be published in a newspaper of general circulation at least fourteen days prior to the hearing, and it must also be mailed to any person filing a written request for notice of hearings. St. 1956, c. 665, §3. Plaintiff does not claim that notice was not published in a newspaper of general circulation. Neither does she claim to have filed a written request for notice of hearing Cf. Chiuccariello v. Building Commissioner of Boston, 29 Mass. App. Ct. 482, 487 (1990) (construing a different statute as permitting aggrieved parties, if not provided with the required statutory notice of a public hearing, to seek relief in the nature of mandamus, but, even such persons may be barred by laches). Furthermore, unlike the act at issue here, the statute at issue in Chiuccariello did not . specifically purport to be the exclusive remedy for procedural defects, St. 1956, c. 665, §11, as amended by St. 1974, c. 669, §1. The Commission’s failure to have obtained plaintiffs written consent to the Open-Space Recreational classification or any other procedural defect could have been raised on appeal to the Superior Court or land court. St. 1987, c. 371, §2 (aggrieved parties may appeal from decision of the zoning commission amending zoning regulation or zoning map or from “any procedural defect therein”).

In any event, apart from the Tort Claims Act, Count V fails to state a claim upon which relief may be granted because civil conspiracy involves the combination of two or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful means. Care v. Rutherford, 106 Mass. 1, 10 (1870). Such a claim may be based on either a “common design” theory of liability or a “substantial assistance or encouragement” theory. Kyte v. Philip Morris Inc., 408 Mass. 162, 166 (1990). The amended complaint contains no facts sufficient to support a claim for civil conspiracy under either of these theories. Plaintiff does not claim that the City joined with BRA to engage in tortious conduct or that they acted in concert; neither does the plaintiff claim that the City knew of its substantial, supporting role in an unlawful enterprise with BRA or, for that matter, that BRA knew of its substantial, supporting role in an unlawful enterprise with the City. The letter from BRA shows that BRA expressed an intention to seek a change in the zoning classification; there is no allegation that the City knew that BRA did not intend, in fact, to seek a change in the classification or that the City caused the BRA to refrain from bringing about the proposed change.

In her opposition to the City’s motion to dismiss, plaintiff suggests that the cause of action labeled “conspiracy,” but which “sounds in negligence,” may actually be a federal civil rights claim. If plaintiff now wishes to assert a civil rights claim, she may, of course, move to seek leave to further amend her complaint if, consistent with Mass.R.Civ.P. 11, there is a good ground to support it.

The City argues that a negligence claim by the plaintiff would be barred by the exclusion in the Tort Claims Act for “any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee.” G.L.c. 258, §10(b). Plaintiff claims, however, that the Commission erroneously classified the district in which her property was located without obtaining her consent as required by Article 33 of the Boston Zoning Code. She, therefore, is not complaining about the exercise of any discretionary function.