Wernick, J.
*340 Background
This is an action for personal injuries against the designer and manufacturer of a treadmill (“Treadmill”), JAS Manufacturing, Inc. (“JAS”), and the health club which owned the Treadmill at the time of accident and made it available for use by its members, Healthtrax International, Inc. d/b/a New England Health and Racquet Club (“Healthrax”). Plaintiff, Harvey Burke (“Burke”), alleged that he was using the Treadmill on January 2, 1990, and was injured when the Treadmill stopped suddenly, without warning, propelling him off the Treadmill to the floor. Burke asserted claims against JAS for negligent design of the Treadmill, negligent failure to warn of stopping characteristics of the Treadmill, breach of the implied warranty of merchantability and violations of G.L.c. 93A. He asserted claims against Healthtrax for negligent maintenance of the Treadmill, negligent failure to warn of stopping characteristics of the Treadmill, breach of the implied warranty of merchantability and violations of G.L.c. 93A.[1]
A jury trial was held February 4-12, 1997. The Court reserved to itself the claims for violations of G.L.c. 93A. The jury returned verdicts for JAS on all counts and for Healthtrax on the counts for breach of the implied warranty of merchantability and for negligent failure to warn. The jury found for the Plaintiff against Healthtrax on the count for negligent maintenance of the Treadmill. The jury awarded Plaintiff damages in the amount of $200,000. Judgment was entered on the jury verdict on February 21, 1997. The Court found for both Defendants on the counts alleging violations of G.L.c. 93A. Judgment was entered on those counts on February 25, 1997. Healthtrax moved for a directed verdict at the close of the evidence. The motion was denied. Healthtrax has now moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial.
While not conceding that the evidence was sufficient to support the jury’s finding of negligence, Healthtrax bases this motion on the alleged insufficiency of the evidence as a matter of law to warrant the jury’s finding that any such negligence was a proximate cause of the Treadmill’s stopping suddenly while in use by Burke on January 2, 1990. After oral argument and consideration of the parties’ memoranda, the Court concludes that the motion for judgment notwithstanding the verdict must be allowed and that the motion in the alternative for a new trial should be denied.
DISCUSSION
It is important to note that Burke’s negligence claim against Healthtrax was based upon evidence of specific acts of negligence; namely that Healthtrax failed to wax, or re-wax, the running board of the Treadmill in accordance with JAS’s recommended maintenance schedule. Burke contended that such failure caused the Treadmill to stop on January 2, 1990. Burke did not argue at trial, and does not argue now, that this was the type of accident which by its very nature would not have happened in the absence of negligence and that Healthtrax’s exclusive control over the Treadmill permitted the jury to find that Healthtrax was negligent without proof of specific acts of negligence.[2]
Burke had the burden of establishing the causal connection between the negligence of Healthtrax and the stopping of the Treadmill by a fair preponderance of the evidence. Such causation cannot be left to speculation, conjecture, or surmise. “If on all the evidence it is just as reasonable to suppose that the cause [of the plaintiffs injuries] is one for which no liability would attach to the defendant as one for which the defendant is liable, then a plaintiff fails to make outhis case.” Alholm v. Wareham, 371 Mass. 621, 627 (1976), quoting Bigwood v. Boston & N. St Ry., 209 Mass. 345, 348 (1911). The inquiry in this case, therefore, is whether, considering the evidence most favorable to Burke, upon any reasonable view of that evidence, there is a combination of facts from which a rational inference may be drawn in favor of Burke that Healthtrax’s negligent failure to wax the running board caused the Treadmill to stop on January 2, 1990. See Sullivan v. Brookline, 416 Mass. 825, 826 (1994).
The Court assumes, as Healthtrax has for purposes of this motion, that the evidence was sufficient to support a finding that Healthtrax negligently failed to wax the running board of the Treadmill in accordance with JAS’s recommended maintenance schedule. Viewed most favorably to Burke, the evidence relevant to the causation issue was as follows:[3] The Treadmill shut off without warning. The abrupt stop of the running belt caused Burke to be thrown to the ground and to damage the cartilage in his right knee. At the moment the Treadmill shut off, no one was near the Treadmill who could have accidently tripped on the power cord or pulled it out. The electrical panel box room at the health club was secured and no one had access to it while Burke was using the Treadmill in question.
Joseph Venditto was present at the time of Burke’s accident. The Treadmill Venditto was using when Burke’s accident occurred did not shut off and he did not see any other machine shut off, or any lights shut off or flicker at the time of the accident.
Documents from JAS stated in part that “it is critical that the running deck be re-waxed at least once per year . .. [and failure to do so] will create excessive friction and drag on the main drive motor and could result in major damage to [the] Treadmill.” A maintenance invoice #1522 dated March 7, 1990, indicated that the Treadmill was re-waxed 64 days after the plaintiffs accident.
A danger of not waxing the board according to schedule is that the Treadmill will shut down, because there is too much strain on the electronics and the *341 motor caused by friction between the deck and the belt the user is walking or running on. In the opinion of George Henry, a Treadmill service technician, the Treadmill will shut down due to wear and tear in the deck and belt, if the deck is not waxed according to schedule.
According to Eric Dick, an engineer for JAS, the running board for the Treadmill should be re-waxed at least once a year. Failure to do so can damage a Treadmill beyond repair by creating excessive friction and drag on the main drive motor. It is possible that a good indication of waiting too long for re-waxing the running board is when the machine is turning off.
Healthtrax argues that there was no expert testimony that the sudden stopping of the Treadmill on January 2, 1990, was caused by failure to wax the Treadmill’s running board and that as a matter of law Burke cannot establish causation without such expert testimony. Burke asserts in his memorandum that there was such testimony. Perhaps this is the reason why Burke does not address Healthtrax’s legal argument that expert testimony is necessary to establish causation in a case of this type. The expert testimony to which Burke refers was allegedly provided by George Henry and Eric Dick.
According to Burke, Mr. Henry testified as follows: most of his service calls involving treadmills shutting off were caused by the owner’s failure to re-wax the running board surface pursuant to the manufacturer’s recommended maintenance schedule. Based on the maintenance records he reviewed for the Treadmill in question, it was more likely than not that the Treadmill shut off because of excess friction caused by the health club’s failure to re-wax the running board as recommended by the manufacturer. According to Burke, Mr. Dick testified that failure to re-wax the running board is the primary cause of the shutting off of treadmills.
The Court’s notes failed to disclose any such testimony by either Mr. Henry or Mr. Dick. The Court therefore has reviewed transcripts of their testimony. The transcripts confirm that no such testimony was provided by either witness.
Healthtrax claims that absent such expert testimony as to causation, Burke’s claim fails as a matter of law. Burke has not addressed this issue at all. The Court, however, is unconvinced that such expert testimony on the ultimate issue of causation is a prerequisite to recovery in a case of this type, where plaintiff has specifically identified the allegedly negligent acts or failures to act which allegedly caused the product to malfunction. In a case of this type, an expert might testify to a unique or characteristic failure mode of a machine when it is not maintained in a particular way. If the evidence supports findings that the maintenance had not been performed and that the unique failure mode had occurred, a jury might well be permitted to find the requisite causal connection for itself, without an opinion on causation from an expert.
The Court need not, however, resolve the legal issue of whether expert testimony on the ultimate question of causation is required in a case of this type. Even if such testimony is not required, the evidence in this case is insufficient as a matter of law to support the jury’s finding of causation. All that exists in this case is the unexplained sudden stopping of the machine while Burke was using it. Although plaintiff has perhaps excluded some possible causes of the sudden stopping, such as the machine’s plug being pulled out of the electrical socket, or someone cutting off the power in the electrical panel room, Burke has by no means excluded other potential causes of stoppage. There is no evidence of any of the symptoms or signs of any characteristic failure mode of a treadmill that has not been properly waxed. There is no evidence of any damage to the belt, the deck, the electronic components, or the motor. There is,no evidence of excessive friction or heat. Indeed, there is no evidence at all of the condition of the belt, deck, electronics or motor before or after the accident. There is no evidence that the Treadmill had been operating abnormally before or after January 2, 1990, in any way consistent with deterioration of performance due to failure to wax. There is no evidence of any problems with the deck or belt either before or after the accident. This appears to have been an isolated incident. There is nothing in the evidence to suggest that it ever happened before or after Burke’s accident. In short, there is nothing to suggest that the condition of the machine had so deteriorated by January 2, 1990, as a result of the alleged non-waxing of the board, that friction from the deteriorated belt or board caused a build up of heat which shut off the Treadmill.
In fact, the evidence appears inconsistent with such a theory. The theory is that failure to wax leads to the deterioration of the belt and/or board, which increases friction, which causes heat, which trips a fuse. According to the evidence, this process is irreversible without re-waxing. Yet there is nothing in this case to suggest deterioration in performance of the Treadmill, before it stopped on January 2, 1990, and nothing to suggest a continuing problem with its performance after it allegedly stopped on January 2, 1990.[4]
The evidence arguably supported a finding that Healthtrax had not followed JAS’s recommendations regarding waxing the Treadmill as of January 2, 1990, and that such failure could cause deterioration of the deck and belt which eventually can cause the Treadmill to overheat and stop. The evidence also supports a finding that the Treadmill did stop suddenly on January 2, 1990, and that such stoppage was not caused by someone’s pulling the Treadmill’s electrical plug out of the socket or by someone’s cutting off power in the electrical panel box room, or by Mr. Burke himself. This evidence, however, is insufficient as a *342 matter of law to permit a jury to conclude that the Treadmill stopped on January 2, 1990, because it had not been properly waxed. On this state of evidence, the cause of the sudden stopping of the Treadmill was a matter of pure speculation, surmise and conjecture. Healthtrax’s motion for judgment notwithstanding the verdict must, therefore, be allowed.
In accordance with Mass.R.Civ.P. 50(c)(1), the Court must consider Healthtrax’s conditional motion for new trial. In the Court’s view, the evidence does not point to any particular cause of the Treadmill’s stopping. It also does not overwhelmingly point away from failure to wax as a possible cause. The evidence leaves the cause to conjecture. If, however, an appellate court concludes that the evidence permits a reasonable inference that failure to wax was more likely than not the cause of this accident, then the verdict should stand.
ORDER
For all the above reasons, Healthtrax’s Motion for Judgment Notwithstanding the Verdict is allowed and its conditional Motion for a New Trial is denied.

 Other claims of Burke against Healthtrax and JAS for breach of the implied warranty of suitability for a particular purpose and breach of express warranty were dismissed at trial before the case was submitted to the jury.

 By noting that Burke did not make this argument, the Court does not mean to suggest that such an argument would be appropriate in this case.

 These facts are taken from Plaintiffs memorandum of law to the extent they are consistent with the Court’s notes and the Court’s review of the transcripts of the testimony of Eric Dick and George Henry.

 The re-waxing of the deck sixty-four days after the accident does not establish that the Treadmill had deteriorated to the point of stopping during use. There is no evidence the Treadmill ever stopped again in any manner consistent with Plaintiffs theory after January 2, 1990, and before the re-waxing.