## TAYGETA CORPORATION *vs.* VARIAN ASSOCIATES, INC.

Essex. November 5, 2001. - March 7, 2002.

Present: GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Limitations, Statute of. Hazardous Materials. Massachusetts Oil and Hazardous Material Release Prevention Act. Water. Statute,* Construction. *Negligence,* Hazardous substance. *Nuisance.*

A property damage claim pursuant to the Massachusetts Hazardous Material Release Prevention Act, G. L. c. 21E, arising from subsurface groundwater contamination of the plaintiff's property, that was deemed filed by May 24, 1996, was not barred by the three-year statute of limitations set forth in G. L. c. 21E, § 11A (4), where the plaintiff's cause of action accrued and the statute of limitations began to run on June 10, 1993, the day the plaintiff gained actual knowledge of the groundwater contamination at its site when groundwater sampling results were received. [222-228]

In an action on a common-law claim of negligence arising from subsurface groundwater contamination of the plaintiff's property, the Superior Court judge erred in granting summary judgment to the defendant, the former owner of nearby property from which the contamination flowed, where a genuine issue of material fact existed as to whether a reasonable person in the plaintiff's position knew, or reasonably should have known, that it had been harmed by the defendant, and where such a disputed issue of fact should have been resolved by a jury, whose decision, in turn, would have determined whether the plaintiff's cause of action was barred by the three-year statute of limitations set forth in G. L. c. 260, § 2A. [228-230]

A claim for a continuing private nuisance that was not barred by the three-year statute of limitations set forth in G. L. c. 260, § 2A, was stated by the plaintiff whose property was contaminated by subsurface water containing hazardous material coming from nearby property formerly owned by the defendant, where, although the defendant ceased its practice of dumping hazardous material on its property in the early 1970's, the remaining presence of that material on the property was an ongoing source of groundwater contamination that continued to flow unabated onto the plaintiff's site. [230-232]

CIVIL ACTION commenced in the Superior Court Department on September 30, 1996.

The case was heard by *Howard J. Whitehead,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Eric W. Wodlinger* (*H. Hamilton Hackney, III*, with him) for the plaintiff.

*Seth D. Jaffe* for the defendant.

The following submitted briefs for amici curiae:

*Cynthia L. Amara, R. Robert Popeo, Jeffrey R. Porter,* & *Andrew N. Nathanson* for Associated Industries of Massachusetts & another.

*Thomas F. Reilly*, Attorney General, & *James R. Milkey*, Assistant Attorney General, for the Commonwealth.

*Jan Richard Schlichtmann* for Wenham Lake Watershed Association.

SPINA, J. Taygeta Corporation (Taygeta), the owner of real property at 31 Tozer Road in Beverly (site), filed a complaint against Varian Associates, Inc. (Varian), the former owner of real property in Beverly located to the northeast of the site (Varian property), to recover damages for groundwater contamination at the site caused by Varian. A Superior Court judge denied Taygeta's motion for summary judgment, granted Varian's motion for summary judgment, and dismissed Taygeta's action as barred by the statute of limitations. We granted Taygeta's application for direct appellate review. The issues now before us are whether the judge (1) misconstrued the discovery rule and therefore erred in concluding that Taygeta's property damage and negligence claims were barred by the statute of limitations; (2) erred in ignoring disputed issues of fact as to when Taygeta reasonably should have known that it had been injured by Varian and in failing to submit such factual issues to a jury; and (3) erred in concluding that Taygeta could not recover on a nuisance claim where groundwater contamination at the site constituted an ongoing harm. We vacate the grant of summary judgment in Varian's favor and remand the case to the Superior Court for further proceedings consistent with this opinion.[1]

---

[1] We acknowledge the amicus briefs filed by the Attorney General on behalf of the Commonwealth, the Wenham Lake Watershed Association, Associated Industries of Massachusetts and the New England Legal Foundation.

1. *Background.* Varian purchased the Varian property in 1959 from Bomac Laboratories, Inc. (Bomac). Both entities were in the business of manufacturing electronic equipment, processes that involved the use of industrial chemicals. From approximately 1950 until 1973, employees of Bomac and Varian discharged thousands of gallons of untreated waste chemicals, including volatile organic compounds (VOCs), onto the ground of the Varian property and into a stream running through the property. In 1970, the predecessor in interest to Taygeta purchased the site from Varian and subsequently constructed on it the Bass River Tennis Club.[2]

In 1985, Varian removed an underground storage tank from its property and found traces of waste acetone in the surrounding soil. The Department of Environmental Quality Engineering (department)[3] determined that a release of hazardous material had occurred, and that it was governed by the Massachusetts Oil and Hazardous Material Release Prevention Act, G. L. c. 21E. After being directed to investigate and assess the source, nature, and extent of the contamination, Varian installed monitoring wells and discovered the presence of VOCs in its groundwater. Varian retained Clean Harbors Environmental Services, Inc. (Clean Harbors), to assist with further assessment and possible remediation activities.

In January, 1987, the department placed the Varian property on its list of confirmed disposal sites and locations to be investigated. Between 1987 and 1989, Clean Harbors prepared and filed with the department several reports concerning the nature and extent of contamination on the Varian property, including the presence of VOCs in the groundwater and the southwest direction of the flow. Clean Harbors recommended the construction of a treatment system to remove and destroy the VOCs dissolved in the groundwater. The treatment system became operational in May, 1992.

---

[2] The purchaser was Connolly Brothers, Inc., a family-owned business that subsequently formed Taygeta Corporation for the purpose of holding and operating certain properties previously owned by Connolly Brothers, Inc., including the site.

[3] The Department of Environmental Protection is the successor agency to the Department of Environmental Quality Engineering. See St. 1989, c. 240, § 101.

Beginning around that same time, Taygeta contacted representatives of GZA GeoEnvironmental, Inc. (GZA), about "environmental conditions" at the site and about the potential cost of a contamination assessment. On January 19, 1993, Taygeta met with GZA to discuss preparation of a bid to conduct such an assessment in conjunction with Taygeta's possible plans to refinance the property. By letter dated April 28, 1993, Taygeta retained GZA to perform some preliminary assessment work at the site. On May 18, 1993, GZA drilled monitoring wells and collected soil and groundwater samples. On June 10, 1993, GZA transmitted the lab analysis of those samples to Taygeta. GZA's data indicated the presence of elevated concentrations of VOCs in the groundwater below the site and the flow of such groundwater in a southerly direction.

Taygeta filed its complaint on September 30, 1996. Count I of the complaint asserted a claim of property damage pursuant to G. L. c. 21E, § 5.[4] Count II of the complaint asserted a claim of negligence in that Varian had released the hazardous material, had allowed it to migrate to the site, and had failed to act expeditiously to remediate known contamination. Count III of the complaint asserted a claim of nuisance. Taygeta alleged that the value of the site had been diminished as a result of the migration of hazardous material from the Varian property to the site and demanded a jury trial. Pursuant to a tolling agreement between the parties, the complaint was considered, for statute of limitations purposes, to have been filed by May 24, 1996. The applicable statutory limitations period was three years, both under G. L. c. 260, § 2A (provision governing tort actions), and G. L. c. 21E, § 11A (4) (provision governing civil actions under

---

[4]General Laws c. 21E, § 5 (*a*), provides, in pertinent part: "Except as otherwise provided in this section, (1) the owner or operator of . . . a site from or at which there is or has been a release or threat of release of oil or hazardous material; (2) any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there is or has been a release or threat of release of hazardous material : . . and (5) any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a . . . site, shall be liable, without regard to fault . . . (iii) to any person for damage to his real or personal property incurred or suffered as a result of such release or threat of release . . . ."

G. L. c. 21E). Thus, Taygeta's claims would be time barred if
its causes of action accrued prior to May 24, 1993, unless the
statute of limitations was tolled by some other statutory or
common-law provision.

Pursuant to Mass. R. Civ. P. 16, 365 Mass. 762 (1974), a
Superior Court judge bifurcated the case with the damages
component to be tried first, followed by the liability component.
Varian filed a motion for summary judgment based on its
contention that Taygeta's claims were time barred. The motion
was denied. The damages component of the case was then tried
to a jury who returned a verdict for Taygeta and awarded it
damages of $2,300,000. The judge allowed Varian's motion for
a new trial subject to a remittitur of the damages to $1,300,000,
to which Taygeta agreed.

Varian filed a renewed motion for summary judgment which
was also denied. The judge concluded that there existed an is-
sue of fact as to the timing of actionable contamination that was
sufficient to warrant submission of the statute of limitations
question to a jury. Subsequently, by order pursuant to Mass. R.
Civ. P. 56 (d), 365 Mass. 824 (1974), the judge specified, as un-
controverted facts, that Taygeta was aware, or reasonably should
have been aware, that it had suffered actionable harm at the
hands of Varian as of March 3, 1993,[5] and that no actions by
Varian had misled Taygeta into believing that it had not been
harmed as of that date. The judge specified that a controversy
did exist as to the actual date on which Taygeta suffered action-
able harm to the site.

Taygeta and Varian then filed cross motions for summary
judgment. The judge first concluded that, because Taygeta had
effectively, if not expressly, conceded that actionable contamina-
tion of the site occurred no later than March 3, 1993, Taygeta's

---

[5]The judge reasoned that Taygeta was on "inquiry notice" by January 19,
1993, that it had a contamination problem sufficient to warrant testing.
Subsequent events revealed that forty-three days passed from the time testing
was ordered (April 28, 1993) until the time the test results were actually
reported to Taygeta (June 10, 1993). If groundwater testing had been ordered
on January 19, 1993, the results would have been reported to Taygeta within
forty-three days of that date, or by March 3, 1993. The judge stated that the
January 19, 1993, inquiry notice date was generously late in light of the
evidence submitted.

claim pursuant to G. L. c. 21E was barred by the statute of limitations. With respect to Taygeta's nuisance claim, the judge concluded that Varian had done nothing to perpetuate the contamination and that the ongoing migration of VOCs to the site was not an abatable condition. Rather, the ongoing contamination was a product of previously terminated tortious conduct and, thus, was not a continuing nuisance.[6] Accordingly, the Superior Court judge granted Varian's motion for summary judgment and dismissed Taygeta's complaint.[7]

2. *Property damage claim pursuant to G. L. c. 21E.* Taygeta first contends that its cause of action did not accrue until it had knowledge of its *actual* harm and the *likely* cause. Taygeta argues that, because subsurface groundwater contamination is not an observable condition, it had no evidence of such contamination at the site until June 10, 1993, the date when Taygeta received groundwater sampling results from GZA. Taygeta asserts that this would be the date on which its cause of action accrued and the statute of limitations began to run. Because Taygeta's complaint was deemed filed by May 24, 1996 (pursuant to the tolling agreement), its lawsuit was therefore not barred by the statute of limitations. Taygeta contends that the Superior Court judge erroneously imposed on it a duty to investigate possible injury on the basis of mere suspicion of potential harm, not knowledge of actual harm. Moreover, it asserts that mere knowledge that the Varian property was contaminated should not have obligated Taygeta to undertake a costly drilling and sampling program at the site, particularly where Varian already had a statutory obligation to

---

[6]The judge noted in his memorandum of decision that the parties did not address Taygeta's negligence claim in either their memoranda or their oral arguments. To the extent that such claim remained in the case, the judge stated that his rulings pertaining to the G. L. c. 21E claim and the nuisance claim were equally applicable to the negligence claim.

[7]The standard of review for a grant of summary judgment is whether, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). See *Attorney Gen.* v. *Bailey,* 386 Mass. 367, 370-371, cert. denied sub nom. *Bailey* v. *Bellotti,* 459 U.S. 970 (1982). "An order granting or denying summary judgment will be upheld if the trial judge ruled on undisputed material facts and his ruling was correct as a matter of law." *Commonwealth* v. *One 1987 Mercury Cougar Auto.,* 413 Mass. 534, 536 (1992).

assess and remediate contamination migrating from its own property.

The property damage claim brought by Taygeta, as well as the statute of limitations applicable thereto, is governed by the comprehensive statutory scheme of G. L. c. 21E. General Laws c. 21E sets forth the legal obligations of owners, operators, and other responsible persons for investigating and addressing contamination at a "site."[8] See G. L. c. 21E, §§ 5, 7, 8, 9. The primary purpose of G. L. c. 21E is "to improve the Commonwealth's capability to respond to environmental contamination and to recover response costs from persons responsible for the contamination." *Guaranty-First Trust Co.* v. *Textron, Inc.*, 416 Mass. 332, 335 (1993). See St. 1983, c. 7, emergency preamble. A second significant purpose of G. L. c. 21E is to enable private persons "to obtain a certain measure of compensation for loss resulting from environmental damage." *Guaranty-First Trust Co.* v. *Textron, Inc.*, *supra* at 335. See G. L. c. 21E, §§ 4, 5. Simply put, G. L. c. 21E was drafted in a comprehensive fashion to compel the prompt and efficient cleanup of hazardous material and to ensure that costs and damages are borne by the appropriate responsible parties. To that end, the department has promulgated extensive regulations, known collectively as the Massachusetts Contingency Plan (MCP), for purposes of implementing, administering, and enforcing G. L. c. 21E. See G. L. c. 21E, § 3; 310 Code Mass. Regs. §§ 40.0000 (1999).

Pursuant to G. L. c. 21E, § 7, "[a]ny owner or operator of a site . . . and any person otherwise described in paragraph (a) of section 5 . . . who holds title to or possession of a site . . . as soon as he has knowledge of a release or threat of release of oil or hazardous material, shall immediately notify the department thereof."[9] The MCP sets forth notification requirements and procedures, and it specifies the threshold quantities and

---

[8] "[s]ite" is defined as "any . . . place or area where oil or hazardous material has been deposited, stored, disposed of or placed, or otherwise come to be located." G. L. c. 21E, § 2. See 310 Code Mass. Regs. § 40.0006 (1995).

[9] General Laws c. 21E does not define what constitutes "knowledge" of a release of hazardous material that triggers a duty to notify the department. However, the MCP defines "[k]nowledge" as "actual knowledge" or

concentrations of hazardous material at which reporting to the department is required. See 310 Code Mass. Regs. §§ 40.0300 (1999). Following the removal of an underground storage tank from the Varian property and the discovery of waste acetone in the surrounding soil, Varian properly notified the department of the hazardous material release.

Once notification has occurred, a property owner or other responsible person is subject to a five-phase assessment and remediation process set forth in the MCP. Phase I consists of preliminary response actions and risk reduction measures, including a limited investigation and evaluation of the contaminated site and a remediation of sudden releases, imminent hazards, and other time-critical conditions. See 310 Code Mass. Regs. §§ 40.0400 (1995). Preliminary response actions may be sufficient for complete evaluation or remediation of localized or uncomplicated releases and threats of release at some sites. See 310 Code Mass. Regs. § 40.0403(3) (1995). Where that is not the case, the property owner or other responsible person must proceed with the subsequent phases of the assessment and remediation process described in the MCP. See 310 Code Mass. Regs. §§ 40.0800 (1995).

For purposes of the present case, the key phase is Phase II, a comprehensive site assessment to collect, develop, and evaluate the following information: (1) the source, nature, extent, and potential impacts of the release of hazardous material; (2) the risk of harm to health, safety, public welfare, and the environment posed by the disposal site[10]; and (3) the need for remedial actions. See 310 Code Mass. Regs. § 40.0833 (1993). A Phase II report shall be submitted to the department at the conclusion of the comprehensive site assessment and shall include, inter alia, a characterization of the sources, nature, and vertical and

"knowledge a person acting in a reasonably prudent and intelligent manner would have, but for that person's willful, knowing or negligent avoidance of learning about the fact or facts in question." 310 Code Mass. Regs. § 40.0006 (1999).

[10]A "[d]isposal site" is defined as any "place or area, excluding ambient air or surface water, where uncontrolled oil or hazardous material has come to be located as a result of any spilling, leaking, pouring, abandoning, emitting, emptying, discharging, injecting, escaping, leaching, dumping, discarding or otherwise disposing of such oil or hazardous material." G. L. c. 21E, § 2. See 310 Code Mass. Regs. § 40.0006 (1995).

horizontal extent of contamination at the disposal site, and the identification and characterization of all potential human and environmental receptors that could be affected by hazardous material at or migrating from such site. See 310 Code Mass. Regs. § 40.0835(4)(f), (g) (1995).

The clear import of this statutory and regulatory scheme is that the burdens of notification, investigation, assessment, and remediation fall squarely on the owner, operator, or responsible person whose property is the source of potential contamination, not on other landowners whose property may be affected by such contamination. In accordance with the obligations imposed by the MCP, Varian has proceeded with preliminary response actions (Phase I) and a comprehensive site assessment (Phase II).[11] It appears that Varian completed a draft Phase II comprehensive site assessment report in June, 2000.[12]

With the comprehensive framework of G. L. c. 21E and the MCP in mind, as well as the purposes for which they were promulgated, we now consider whether Taygeta's claim for property damage is barred by the applicable statute of limitations. General Laws c. 21E includes its own statute of limitations which is as follows:

> "Actions by persons other than the commonwealth to recover for damage to real or personal property shall be commenced within three years after the date that the person seeking recovery first suffers the damage or within three years after the date the person seeking recovery of such damage discovers or reasonably should have discovered

[11]On March 2, 1992, the Varian property was designated by the department as a public involvement plan site. See G. L. c. 21E, § 14; 310 Code Mass. Regs. § 40.1404 (1995). Such a designation required Varian to prepare a plan that identified specific activities that would be undertaken to address public concerns about contamination at the disposal site. See 310 Code Mass. Regs. § 40.1405 (1995). A final public involvement plan for the Varian property was submitted to the department on May 18, 1993.

[12]Following completion of the Phase II comprehensive site assessment, Varian will proceed with the remaining phases of the assessment and remediation process set forth in the MCP: Phase III — identification and selection of comprehensive remedial action alternatives; Phase IV — implementation of the selected remedial action alternative; and Phase V — operation, maintenance, or monitoring of the disposal site. See 310 Code Mass. Regs. § 40.0810 (1995).

that the person against whom the action is being brought is a person liable pursuant to this chapter for the release or threat of release that caused the damage, whichever is later."

G. L. c. 21E, § 11A (4). The point of contention between the parties is when Taygeta discovered or reasonably should have discovered that it had been harmed by Varian. The statutory language provides that the clock starts running on the statute of limitations when a plaintiff discovers or reasonably should have discovered (1) the damage, and (2) the cause of the damage, i.e., the person liable under G. L. c. 21E for the release or threat of release of hazardous material. This interpretation of G. L. c. 21E, § 11A (4), is consistent with the discovery rule commonly followed in Massachusetts courts in negligence cases. See *One Wheeler Rd. Assocs.* v. *Foxboro Co.*, 843 F. Supp. 792, 797-798 (D. Mass. 1994) (noting that, prior to 1992, G. L. c. 21E had no specified statute of limitations and concluding that under common law of Massachusetts, cause of action created by G. L. c. 21E, § 5, accrued when plaintiff discovered or reasonably should have discovered that contamination had caused damage to value of property and that defendant had caused damage).

It is a settled rule of statutory construction that "[a] statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." *Riley* v. *Davison Constr. Co.*, 381 Mass. 432, 438 (1980), quoting *Pineo* v. *White*, 320 Mass. 487, 491 (1946). See *Guaranty-First Trust Co.* v. *Textron, Inc.*, *supra* at 336. Although G. L. c. 21E, § 11A (4), incorporates a discovery rule similar to the common law, it departs from the common law in its requirement that a plaintiff also have reason to know that a landowner is liable under G. L. c. 21E. Thus, § 11A (4) must be considered in the context of the over-all statutory scheme and the regulations set forth in the MCP. See *Weaver* v. *Commonwealth*, 387 Mass. 43, 50 (1982) (tolling provisions of G. L. c. 260 do not apply to cause of action brought under statute that includes its own statute of limitations). Cf. *Commonwealth* v. *Forte*, 423 Mass. 672, 674 (1996) (common-law double jeopardy principles not applicable where criminal penalties that might be imposed

are authorized by statute and prison discipline already imposed was based on regulation authorized by statute).

A plaintiff who brings a cause of action for property damage under G. L. c. 21E has no duty to investigate whether its property may have been contaminated by another. Rather, it is the owner or operator of a site from which there has been a release of hazardous material, or other person who caused or is legally responsible for such a release, that must investigate, assess, and delineate the geographic scope of the contamination, including its possible migration from the point of origin. See 310 Code Mass. Regs. §§ 40.0483, 40.0830 (1995). Generally speaking, it is not until this process provides definitive information that hazardous material has migrated from its original site and contaminated other properties, and the owners of such other properties receive actual knowledge of their own contamination, that they will have discovered their damages and the cause thereof. At that point, the statute of limitations begins to run. An interpretation of the statute of limitations that imposes on plaintiffs an obligation to investigate their property in advance of a defendant's completion of the requisite assessment would be contrary to the statutory and regulatory scheme. Put another way, even a plaintiff who has concerns that a known release on neighboring property may have migrated onto the plaintiff's property may reasonably rely on the defendant to complete the steps required under G. L. c. 21E and the MCP. There is nothing unreasonable in a plaintiff's decision not to go forward with an assessment duplicating the work that the defendant is already obligated to perform.

We recognize that there will be instances, prior to completion of a comprehensive site assessment, when a person seeking recovery for property damage "reasonably should have discovered" that the person against whom the action is being brought is a person liable under G. L. c. 21E for the release of hazardous material that caused the damage. Some forms of environmental contamination may be obvious, such as through sight, smell, or taste, and sometimes there is no uncertainty as to its source. Similarly, a property owner may acquire actual knowledge of damage from the release of hazardous material where such owner, as in the present case, undertakes testing of its own property and learns of the existence of contamination

that only could have emanated from one source. Once a property owner acquires such actual knowledge, the statute of limitations begins to run, even though the person liable under G. L. c. 21E may not have completed its own assessment of the contamination in accordance with the MCP.

By its nature, subsurface groundwater contamination is inherently unknowable in the absence of environmental testing. To establish its presence, consultants must drill monitoring wells, collect samples, and analyze the data. In the present case, Varian discovered waste acetone in the soil of its own property, notified the department of the hazardous material release, and had started to proceed with the multiphase assessment and remediation process set forth in the MCP. Notwithstanding Varian's ongoing actions, Taygeta ultimately undertook its own testing of the site, at least in part for potential refinancing purposes. As a result, Taygeta gained actual knowledge of groundwater contamination at the site when it received completed test results from GZA on June 10, 1993.[13] The contamination was similar to that detected in groundwater samples collected from monitoring wells on the Varian property. Thus, June 10, 1993, is the date on which Taygeta's cause of action accrued and the statute of limitations began to run. That Taygeta may have harbored suspicions prior to that date did not trigger a duty to conduct an independent investigation, and Taygeta was not under any obligation to undertake its investigation at some earlier point in time. Because Taygeta's complaint was deemed filed by May 24, 1996, its cause of action for property damage is not barred by the three-year statute of limitations set forth in G. L. c. 21E, § 11A (4). The Superior Court judge erred in granting summary judgment to Varian with respect to Taygeta's claim under G. L. c. 21E, § 5.

3. *Negligence claim.* Taygeta's common-law claim of negligence requires a different, but related, analysis from that given its property damage claim under the statutory and regulatory framework of G. L. c. 21E and the MCP. General Laws

---

[13]While Taygeta had the financial resources to perform its own testing of the site for environmental contamination, many victims of contamination will not have such resources. Although G. L. c. 21E, § 4, allows for the recovery of investigative expenses as response costs, this provision does not assist those property owners who do not have the financial resources to afford testing in the first instance.

c. 260, § 2A, states that, "[e]xcept as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues." When a cause of action accrues has not been defined by statute but has been the subject of judicial interpretation in this Commonwealth. See *Riley* v. *Presnell*, 409 Mass. 239, 243 (1991). Ordinarily, actions in tort accrue at the time the plaintiff is injured. See *Joseph A. Fortin Constr., Inc.* v. *Massachusetts Hous. Fin. Agency*, 392 Mass. 440, 442 (1984). The unfairness of such a rule, however, has been recognized in actions where the wrong is "inherently unknowable." See *Mohr* v. *Commonwealth*, 421 Mass. 147, 155-156 (1995); *Olsen* v. *Bell Tel. Labs., Inc.*, 388 Mass. 171, 175 (1983). Thus, we have developed a so-called "discovery rule" that tolls the statute of limitations until a plaintiff knows, or reasonably should have known, that it has been harmed or may have been harmed by the defendant's conduct. See *Mohr* v. *Commonwealth*, supra at 156; *Riley* v. *Presnell*, supra at 240; *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 205-206 (1990). The plaintiff need not know the full extent of its injury for a cause of action to accrue and for the statute of limitations to begin running. See *Olsen* v. *Bell Tel. Labs., Inc.*, supra.

In most instances, the question when a plaintiff knew or should have known of its cause of action is one of fact that will be decided by the trier of fact. See *Riley* v. *Presnell*, supra at 240, 247-248, and cases cited. See also *Lindsay* v. *Romano*, 427 Mass. 771, 774 (1998). The appropriate standard to be applied when assessing knowledge or notice is that of a "reasonable person in the plaintiff's position." *Riley* v. *Presnell*, supra at 245. See *Bowen* v. *Eli Lilly & Co.*, supra at 208, 210.

Between early 1990 and early 1993, information was coming to light that several properties on Tozer Road were contaminated with VOCs, the source of which appeared to be the Varian property. At the same time, Varian was representing to the department that the hazardous material dissolved in its groundwater was contained in a localized area and that remedial response actions had been undertaken in an expeditious manner. Furthermore, until the investigation of the Varian property, conducted pursuant to G. L. c. 21E, had been completed, Varian could not reach a conclusion as to whether there was any link

between its own contamination and that alleged to be present at other properties in the neighborhood. In April, 1993, Varian continued to assert publicly that it did not know the boundaries of its contamination and had no definite date as to when its environmental studies would be completed. In its Public Involvement Plan dated May 18, 1993, Varian stated that public concerns about the nature and extent of contamination on the Varian property, as well as the assessment of off-site hazardous material, would be addressed once it began Phases II and III of the assessment and remediation process set forth in the MCP.

Varian's comprehensive responsibilities under G. L. c. 21E and the MCP, and the corresponding lack of any obligation on Taygeta's part thereunder to conduct an independent investigation, necessarily influence the analysis of what Taygeta "reasonably" should have known. The summary judgment materials herein raise a genuine issue of material fact as to whether a reasonable person in Taygeta's position knew, or reasonably should have known, that it had been harmed or may have been harmed by Varian prior to May 24, 1993. Such a disputed issue of fact should be resolved by a jury. The jury's decision, in turn, will determine whether Taygeta's cause of action is barred by the three-year statute of limitations set forth in G. L. c. 260, § 2A. We conclude that the Superior Court judge erred in granting summary judgment to Varian on Taygeta's claim of negligence.[14]

4. *Nuisance claim.* Taygeta contends that the disposal of hazardous material onto the Varian property created a nuisance because VOCs continue to migrate to the site and contaminate the groundwater. Taygeta further claims that Varian has failed to remediate such migration. It asserts that, because the contamination is ongoing, there is an invasion of its property rights from day to day. Consequently, Taygeta argues that each invasion of its rights gives rise to a separate cause of action, and that its lawsuit is timely for any damages arising from the contamination that occurred within the statute of limitations period.

The purpose of a private nuisance action is to obtain a remedy

---

[14]In light of this conclusion, we need not consider whether Taygeta's fraudulent concealment and equitable estoppel arguments involve disputed issues of fact that also must be resolved by a jury.

for interference with the use and enjoyment of property.[15] See *Connerty* v. *Metropolitan Dist. Comm'n*, 398 Mass. 140, 147 (1986). See also D.B. Dobbs, Torts § 463, at 1321 (2000). "A private nuisance is actionable when a property owner creates, permits, or maintains a condition or activity on [its] property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another" (emphasis omitted). *Doe* v. *New Bedford Hous. Auth.*, 417 Mass. 273, 288 (1994), quoting *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 17 (1987). Cf. *Morash & Sons* v. *Commonwealth*, 363 Mass. 612, 619 (1973) (Commonwealth not immune from liability where it creates or maintains private nuisance that causes injury to real property of another). An action for a continuing nuisance allows a plaintiff whose claim otherwise would be untimely to sue where its property rights are invaded from time to time because of repeated or recurring wrongs, resulting in new harm to the property on each occasion. See *Carpenter* v. *Texaco, Inc.*, 419 Mass. 581, 583 (1995). See also *Sixty-Eight Devonshire, Inc.* v. *Shapiro*, 348 Mass. 177, 183-184 (1964) (damage to plaintiff's building caused by recurring discharge of water from defective gutter on defendant's building was continuing nuisance such that cause of action not barred by statute of limitations); *Asiala* v. *Fitchburg, supra* at 16-17, 19 (inadequately constructed retaining wall resulted in excess lateral earth pressure which, over years, caused plaintiff's house to develop structural problems; cause of action not barred by statute of limitations). A continuing trespass can cause temporary harm, permanent harm, or both. See *Church* v. *General Elec. Co.*, 138 F. Supp. 2d 169, 175-176 (D. Mass. 2001), citing *Walker Drug Co.* v. *La Sal Oil Co.*, 972 P.2d 1238, 1246 n.9 (Utah 1998).

In *Carpenter* v. *Texaco, Inc., supra* at 583, this court stated that "a continuing trespass or nuisance must be based on recurring tortious or unlawful conduct and is not established by the continuation of harm caused by previous but terminated tortious or unlawful conduct." The plaintiffs in those cases asserted

---

[15]In contrast to a private nuisance action, "[a] nuisance is public when it interferes with the exercise of a public right by directly encroaching on public property or by causing a common injury." *Connerty* v. *Metropolitan Dist. Comm'n*, 398 Mass. 140, 148 (1986). Taygeta has not alleged a public nuisance herein.

claims for nuisance based on the continued presence of gasoline on their properties caused by earlier leakage from an underground tank on the defendants' property. This court rejected the plaintiffs' argument that the presence of gasoline on their properties was a continuing nuisance because the defendants' tortious conduct and the seepage had ended after the offending underground storage tank was removed, more than six years before the plaintiffs filed their complaints. *Id.* at 582-583. We pointed out that the plaintiffs' claims were essentially for a single encroachment that had resulted in permanent harm. *Id.* at 583. Their claims, therefore, were barred by a three-year statute of limitations. Significantly, however, we noted that if the seepage of gasoline onto the plaintiffs' properties had occurred within three years of the commencement of the plaintiffs' actions, it would have presented a different case. *Id.* at 583 n.5. See Restatement (Second) of Torts § 834 comment e, at 150-151 (1979) ("[I]f the activity has resulted in the creation of a physical condition that is of itself harmful after the activity that created it has ceased, a person who carried on the activity that created the condition . . . is subject to the liability for a nuisance, for the continuing harm. . . . This is true even though he is no longer in a position to abate the condition and to stop the harm"). Cf. *Church* v. *General Elec. Co., supra.* Taygeta's nuisance claim is based on the continuing seepage of pollutants that is still occurring within the statute of limitations. This presents the precise fact pattern that we distinguished in *Carpenter* v. *Texaco, Inc., supra* at 583 n.5.

Varian ceased its practice of dumping hazardous material on its property in the early 1970s. However, the remaining presence of that hazardous material on the Varian property is an ongoing source of groundwater contamination that continues to flow unabated onto the site. In light of this ongoing seepage, a condition caused and maintained by Varian, we conclude that Taygeta has stated a claim for a continuing nuisance that is not barred by the three-year statute of limitations.

5. *Conclusion.* The judgment is vacated, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*