Houston, J.
The plaintiffs, David and Cheryl Bovarnick (the “Bovarnicks”) filed this action alleging breach of contract (Count I), breach of fiduciaiy duty (Count II), and violation of M.G.L.c. 93A, §§1, 2 (Count III) by the Defendant Fleet National Bank (“Fleet”) arising from the purchase of certificates of deposit (“CD”). Fleet moves for summary judgment on all three claims. Fleet argues that Count I is barred by the statute of limitations and Count II is barred because the relationship Fleet and the Bovarnicks have is a contractual relationship. Finally, Fleet contends it is entitled to judgment as a matter of law on Count III because the Plaintiffs have not established the necessary elements for a violation of Chapter 93A.
A hearing on the Defendant’s Motion for Summary Judgment was held before me and the plaintiffs were granted leave and filed a Supplemental Memorandum In Opposition to Defendant’s Motion for Summary Judgment and Fleet filed a Reply to Plaintiffs’ Supplemental Memorandum in Opposition. For the reasons discussed below, the Defendant’s motion for summary judgment on all counts is ALLOWED.
FACTUAL BACKGROUND
The undisputed facts, viewed in the light most favorable to non-moving party, are as follows.
In 1984 and 1988, the Bovarnicks opened CD accounts with Mutual Bank for Savings. Each account provided that its six-month deposit period would be automatically renewed for successive terms unless the deposit was withdrawn. In 1989, the Bovarnicks opened another CD account with First Mutual of Boston, which also provided for automatic renewal for successive terms of the six-month deposit period. In September 2001, certain deposits formerly held by Mutual Bank for Savings and/or First Mutual of Boston were acquired by the First National Bank of Boston, Fleet’s predecessor in interest, including the three CD accounts held by the Bovarnicks.
In October 2001, the Bovarnicks inquired into redeeming said CD accounts at a Fleet bank branch in Needham. The plaintiffs claim they never withdrew any funds from any of the CD accounts. Despite investigation, the customer service representative could not locate any information concerning the CD accounts. Upon further investigation and according to its account balance spread sheet, Fleet discovered the funds from the two CD accounts had been withdrawn on July 27, 1994 and August 15, 1994 but were unable to locate the cashier’s checks representing the redemption of the CD accounts at issue due to Fleet’s document six-year retention policy and practice. On August 20, 2002, the Bovarnicks filed a three-count complaint against Fleet.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. *505 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Count I — Breach of Contract
Fleet contends they are entitled to judgment as a matter of law for Count I because the claim is barred by the statute of limitations.
The statute of limitations applicable to breach of contract claims is six years from the accrual of the cause of action. M.G.L.c. 260, §2 (“actions of contract . . . shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues”). The statutory period begins to run when the plaintiff knew or should have known of the cause of action. Tarygeta v. Varian Associates, 436 Mass. 217, 229 (2002); Campanella & Cardi Construction Co. v. Commonwealth, 351 Mass. 184, 185 (1966). It is Fleet’s contention that the cause of action accrued in 1994 when the funds were withdrawn from the CD accounts (the alleged breach) and the plaintiffs’ claim is barred because they did not file the Complaint until 2002, eight years after the action accrued.
The plaintiffs argue that this action is governed by the Uniform Commercial Code (“UCC”) because the Passbooks for the CD accounts constitute “negotiable instruments” and thus, M.G.L.c. 106, §3-118(e) is the governing statute of limitations. Under §3-118(e), the six-year statute of limitations does not accrue upon the defendant’s breach but rather after demand for payment is made to the maker. Accordingly, the plaintiffs argue, the 6-year period did not begin to run until demand for payment was made in October 2001. Fleet contends that the Passbooks are not negotiable instruments as defined under the UCC and thus the UCC statute of limitations is inapplicable.
Article 3 of the UCC applies only to “negotiable instruments.” M.G.L.c. 106, §3-102(a) (1998). The plaintiffs claim the Passbooks are negotiable instruments because they are certificates of deposit as defined in Article 3. However, “a certificate of deposit should be distinguished from a bank passbook, which is merely in the nature of a receipt... of a deposit by the bank; while a passbook may be transferred ... it is not a negotiable instrument, either by itself. . . nor can it be made so by contract.” 10 Am.Jur.2d Banks §§347, 354 (emphasis added).
For the Passbooks to constitute certificates of deposit, they must meet the four requirements of negotiability. Both Chapter 765 of the Acts of 1957 and the 1998 amended version of the UCC defines certificate of deposit as an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. §3-104(j). UCC §3-104 provides the following requirements for an instrument to be negotiable: (1) it must be signed by the maker or drawer; (2) it must contain an unconditional promise or order to pay a sum certain in money to drawer except as authorized by Article 3; (3) it must be payable on demand or at a certain time; and (4) it must be payable to order or bearer. The Passbooks do not meet the fourth requirement because they do not contain the words payable to “the order of’ or “to bearer.” Further they do not contain an unconditional promise to pay because the additional language restricts their transferability.
Moreover, many courts have determined that an instrument that meets all of these requirements may nevertheless be rendered nonnegotiable by the presence of additional language. Several courts have held certificates of deposit which were marked “not transferable” were not negotiable instruments. Drabkin v. Capital Bank N.A., 156 BR 102 (Dist.Col. 1993); Amarillo Nat’l Bank v. Dilday, 693 S.W.2d 38 (Tex.App.Amarillo 1985).
For Count I to be governed by the UCC, the Passbooks, if considered certificates of deposit, must first meet all four requirements of a negotiable instrument regardless of whether the 1957 or 1998 version applies. Further, under the 1998 amended version, even if the Passbooks satisfy the four requirements, the presence of the additional “Not Transferable” language contained therein renders the Passbooks nonnegotiable instruments. Under the current version of §3-104(d), a promise or order other than a check is not an instrument, if it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable. On the first page of the Passbooks, there lies the phrase “NOT TRANSFERABLE” in capital letters. Additionally the terms and conditions of the contract located on the second page of the Passbooks state that “This Certificate and the deposit represented thereby are neither negotiable nor assignable except as collateral . . . ; Not transferable except on the records of this institution.” The Passbooks are not negotiable instruments because the presence of both of these statements on the Passbooks constitute a conspicuous statement, to the effect that renders the promise or order non-negotiable as expressed in §3-104(d).
The plaintiffs argue that the 1998 amended version does not apply to the CDs at issue because they were purchased several years prior to the enactment. However, even assuming the plaintiffs are correct, several courts have held the presence of this additional nonnegotiable language rendered instruments, including certificates of deposit, nonnegotiable even prior to the codification of §3- 104(d) in the appropriate state UCC. Estate of Isaacson, 508 So.2d 1131 (Miss. 1987) (Court concluded that the presence of language that they were “not transferable” or “non-negotiable” took the CDs outside the scope of Article 3, without even relying upon a provision such as §3-104(d)); Drabkin, 156 BR 102 (Court held that a certificate of deposit which was clearly marked in two places as nonnegotiable and nontransferable was not negotiable even though it *506 otherwise conformed with the requirements of UCC §3-104). Assuming, arguendo, that the Passbooks constitute certificates of deposit and meet all of the requirements of negotiability, they are nonetheless rendered nonnegotiable by the presence of the additional language under both the Act of 1957 and 1998 amended version of Article 3. Consequently, Count I is not governed by §3-118(e) of the UCC, and this action is governed by the statute of limitations for a breach of contract action.
In the alternative, the plaintiffs argue that even if the UCC statute of limitations does not apply, there is a genuine issue of fact as to when the breach was capable of being discovered and the statutory period is triggered and whether a plaintiff knew or should have known of a cause of action to be decided by the trier of fact. Tarygeta, 436 Mass, at 229; CampaneUa, 351 Mass, at 185. In breach of contract cases, the statute of limitations may be tolled in a situation where the cause of action is not capable of being discovered by the injured party though the exercise of reasonable diligence. Int’l Mobile Corp. v. Corroon & Black, Fairfield, & Ellis, Inc., 29 Mass.App.Ct. 215, 221-22 (1990); Graveline v. BayBank Valley Trust Co., 19 Mass.App.Ct. 253-54 (1985) (“defects by their very nature could not have been discovered through the exercise of reasonable diligence”).
It is undisputed that the Bovarnicks delivered to their accountant 1099 forms that they received from BankBoston with respect to the 1994 tax year, and that these forms indicated that the CD accounts at issue were closed in 1994. The plaintiffs claim that because they retained the Passbooks and that they do not monitor the dozens of 1099 forms they receive every year to confirm that each CD account still exists, they were not put on notice of the defendant’s conduct that had allegedly caused them injury. See Szymanski v. Boston Mutual Life Ins. Co., 56 Mass.App.Ct. 367, 369 (2002). Notice is predicated on the view of a reasonably prudent person in plaintiffs position. Bowen v. Eli Lilly & Co., 408 Mass. 204, 210 (1990). A jury could not conclude that a reasonably prudent person in the plaintiffs’ position bears the obligation, at a minimum, to read the 1099s issued to them each tax year to confirm that their CD accounts have not been wrongly closed. Accordingly, the statute of limitations was triggered in 1994 when the accounts were closed and such was indicated on the 1099 forms submitted to the Bovarnicks. The statute was not tolled by the plaintiffs’ failure to conduct reasonable diligence and read the 1099 forms and Fleet is entitled to judgment as a matter of law because the claim is barred by the statute of limitations under M.G.L.c. 260, §2.
Count II — Breach of Fiduciary Duty
The Bovarnicks allege that Fleet, as the institution holding their deposits, owed them a fiduciary duly which they subsequently breached by failing to redeem the deposits in 2001. It is established that the relationship between a bank and a depositor is a contractual, rather than a fiduciary one. Govoni & Sons Construction v. Mechanics Bank, 51 Mass.App.Ct. 35, n.11 (2001). Accordingly, Fleet did not owe the Bovarnicks a fiduciary duty and cannot be found liable for a breach of any fiduciary duty and thus they are entitled to judgment as a matter of law.
Count III — Violation of Chapter 93A
In Count III, the plaintiffs allege that Fleet engaged in unfair or deceptive practice in the conduct of commerce in violation of M.G.L.c. 93A, §2(a) because they failed to properly retain, document and account for the certificates of deposit, reasonably and appropriately investigate the Bovarnicks’ claims, offer an explanation of the location of the said deposits, or report the certificates missing or abandoned to the proper regulatory agencies.
The Supreme Judicial Court has found unfair business practices within the meaning of 93A, in addition to being “immoral, unethical, oppressive or unscrupulous,” they must fall “within... the penumbra of some common-law statutory, or other established concept of unfairness.” Siebold Hann Pub. Group, Inc. v. Lessem, 53 Mass.App.Ct. 1106 (2001), citing Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 27 (1997).
During the January 28, 2004, hearing for Fleet’s Motion for Summary Judgment, this court determined the burden placed on Fleet to retain documents over several years is substantial. Consequently, this court refused to draw a negative inference from Fleet’s failure to locate the sought-after cashier checks that were destroyed in accordance with the bank’s seven-year retention policy. While it is true that Fleet was able to locate spreadsheets concerning these certificates of deposit despite this seven-year retention policy, this does not lead to the conclusion that Fleet was engaged in deceptive practice and purposely destroyed or failed to locate the checks. Conversely, the fact that Fleet was able to locate documents that, in accordance with its retention policy, should have already been destroyed supports the finding that Fleet did not shirk their investigative and reporting duties regarding the Bovarnicks’ claims. Fleet is entitled to judgment as a matter of law for Count III because there is no evidence that Fleet engaged in any immoral, unethical or unscrupulous or otherwise unfair or deceptive practice within the meaning of 93A.
ORDER
For the foregoing reasons it is hereby ORDERED that the Defendant’s Motion for Summary Judgment on Counts I, II and II is ALLOWED.