# United States Court of Appeals
## For the First Circuit

Nos. 25-1258
    25-1265

THE CITY OF BOSTON; THE BOSTON PUBLIC HEALTH COMMISSION; THE
BOSTON HOUSING AUTHORITY,

Plaintiffs, Appellants/Cross-Appellees,

v.

OPTUMRX, INC.,

Defendant, Appellee/Cross-Appellant,

EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS ADMINISTRATORS, LLC,
d/b/a Express Scripts, f/k/a Medco Health, LLC; MEDCO HEALTH
SOLUTIONS, INC., f/k/a Merck-Medco Managed Care LLC; EXPRESS
SCRIPTS PHARMACY, INC.; ESI MAIL ORDER PROCESSING, INC.; ESI
MAIL PHARMACY SERVICE, INC.; OPTUMINSIGHT, INC.; OPTUMINSIGHT
LIFE SCIENCES, INC.; UNITEDHEALTH GROUP INCORPORATED,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Gelpí, Lynch, and Howard,
Circuit Judges.

Mimi Liu and Frederick C. Baker, with whom Elizabeth Smith,
Michael J. Quirk, Motley Rice LLC, Adam Cederbaum, Corporation
Counsel, City of Boston, Caesar P. Cardozo, General Counsel, Boston
Housing Authority, Batool Raza, General Counsel, Boston Public

Health Commission, Christopher C. Naumes, Robert T. Naumes Sr., and Naumes Law Group were on brief, for appellants.

Keith R. Blackwell, with whom Brian D. Boone, Matthew P. Hooker, Matthew P. McGuire, Andrew Hatchett, Grace Assaye, Alston & Bird LLP, Shamis Beckley, Dane R. Voris, and Cooley LLP were on brief, for OptumRx, Inc; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; UnitedHealth Group Incorporated.

Christopher G. Michel, with whom Michael Lyle, Jonathan G. Cooper, Patrick D. Curran, Alexander del Nido, and Quinn Emanuel Urquhart & Sullivan, LLP were on brief, for Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions; Express Scripts Pharmacy, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.

———————————

March 2, 2026

———————————

**LYNCH**, **Circuit Judge**.  The City of Boston and its Public Health Commission and Housing Authority ("the City") sued two pharmacy benefit managers ("PBMs"), OptumRx and Express Scripts, on January 12, 2024, in state court.  The two defendants were alleged to have violated Massachusetts public nuisance law by colluding with opioid manufacturers to misrepresent the risks of such drugs, leading to injury to the City.  The City had brought a similar suit in 2018 against those manufacturers, as well as distributors and pharmacies.  After this case was removed to federal court, the PBMs moved to dismiss on grounds that the 2024 suit was brought well after the three-year state statute of limitations period had run.  The City opposed dismissal, arguing that its complaint pled a plausible continuing nuisance theory. It also argued that defendants had fraudulently concealed the cause of action from it, and that the time before the discovery of the City's cause of action had to be excluded in determining the time limit for commencement of the action.

In a carefully reasoned opinion, the district court granted the PBM's dismissal motion, finding the City knew or should have known well before 2021 of its alleged injuries from defendants' actions and yet had not filed suit before the three-year statute of limitations had expired. City of Boston v. Express

Scripts, Inc., 765 F. Supp. 3d 31, 38-39 (D. Mass. 2025).[1] The court found the City failed to plead a continuing nuisance under Massachusetts law, which requires a plaintiff to plead "<u>recurring</u> tortious or unlawful conduct" that occurs within the limitations period and cannot be "established by the continuation of harm caused by previous but terminated tortious or unlawful conduct." <u>Id.</u> at 40 (emphasis added) (quoting <u>Taygeta Corp.</u> v. <u>Varian Assocs.</u>, 763 N.E.2d 1053, 1065 (Mass. 2002)). The court held that the City's complaint did not plead a continuing nuisance, as it included no "sufficiently specific recent act" by defendants that was itself tortious or unlawful. <u>Id.</u> The City's "conclusory statements" "labeling [untimely] allegations as 'ongoing'" did not convert those statements "into [timely] 'factual allegations.'" <u>Id.</u> Indeed, the court noted that "[t]he most recent actions alleged" in the City's complaint were "remedial measures [d]efendants took to address the opioid epidemic, not actionable misconduct." <u>Id.</u>

The district court rejected the City's tolling argument under Mass. Gen. Laws ch. 260, § 12 for fraudulent concealment, holding that theory "does not apply when 'the plaintiff has actual knowledge of the claim,'" which is imputed to a plaintiff who "had

---

[1] The district court also granted defendants' motion to dismiss the City's federal RICO claims on timeliness grounds. <u>Id.</u> at 39-46. The City does not appeal that ruling.

- 4 -

the means to acquire [the] facts, in circumstances where the probability of wrongdoing was so evident that possession of the means was equivalent to actual knowledge." Id. at 42 (alteration in original) (quoting Magliacane v. City of Gardner, 138 N.E.3d 347, 357-58 (Mass. 2020)). The court held that the City had actual knowledge of its cause of action under this standard before 2021 based on a number of factors, including its knowledge of the opioid epidemic, its access to the many public investigations by numerous state agencies and litigation brought by cities, towns, and counties, and its knowledge of the National Prescription Opiate Multi-District Litigation ("MDL"), In re National Prescription Opiate Litigation, No. 1:17-MD-2804 (N.D. Ohio), which included PBM defendants as of 2018. Id. at 42-43. These and other things "made the 'probability of wrongdoing . . . so evident' that reasonable diligence [by the City] would have uncovered it." Id. at 43 (omission in original) (quoting Magliacane, 138 N.E.3d at 358). The City has appealed from the dismissal order, arguing it was in error.

The PBMs have cross-appealed from the court's denial of their motion to disqualify Motley Rice, the law firm representing the City in this case. Express Scripts, No. 1:24-CV-10525 (D. Mass. Oct. 18, 2024), ECF No. 94. That firm between 2018 and 2021 had represented the City of Chicago, the District of Columbia, and the State of Hawaii to investigate OptumRx. The court found

- 5 -

persuasive the reasoning of the MDL court in denying a similar motion to disqualify Motley Rice. In re Nat'l Prescription Opiate Litig., No. 1:17-MD-2804, 2024 WL 3387288 (N.D. Ohio Mar. 18, 2024).

**I.**

As to OptumRx's cross-appeal, we affirm the denial of the motion to disqualify Motley Rice from representing the City. Our review is for abuse of discretion. United States v. Alfonzo-Reyes, 592 F.3d 280, 293 (1st Cir. 2010). There was no such abuse. There was no error of law, and the facts clearly supported the court's determination. As the district court stated, all documents previously produced in response to the three opioid investigations have been deposited in the MDL repository, where they are available to "all [p]laintiffs['] counsel." We also agree with the reasoning of the MDL court's rejection of a motion to disqualify Motley Rice, which "examine[d] the [disqualification] motion with extreme caution" "given that disqualification is a potent weapon that can be deployed strategically." In re Nat'l Prescription Opiate Litig., 2024 WL 3387288, at *6 (internal quotation marks omitted). We reject the PBMs' argument that the district court misapplied the material disadvantage element and hold that regardless, OptumRx cannot have suffered a disadvantage, much less a material one.

**II.**

As to the City's appeal, we affirm the dismissal of the City's state law claim. The court committed no errors of law and its determinations are well supported based on the City's own pleadings and public records attached to its pleadings.

**A.**

We first address the City's argument that the district court erred in finding the public nuisance claim was not tolled under Mass. Gen. Laws ch. 260, § 12. That statute reads:

> If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action.

Mass. Gen. Laws ch. 260, § 12. For present purposes, we will assume dubitante that the City has plausibly pled the prerequisites for application of the statute.[2] The district court was correct in holding that statutory tolling is inapplicable due to the many events before 2021 that at the very least put the City on notice of a "probability of wrongdoing" by the PBMs and the fact that the City "had the means to acquire [the] facts" to bring a timely claim against the PBMs. Magliacane, 138 N.E.3d at 357-58 (quoting

---

[2] The same reasons that support our holding under state law also dispose of the Federal Rule of Civil Procedure 9(b) issue.

<u>Demoulas</u> v. <u>Demoulas Super Mkts., Inc.</u>, 677 N.E.2d 159, 174 n.25 (Mass. 1997)).

To its credit, the City does not dispute that it knew of the harms to it from the opioid epidemic long before 2021, as indeed it began pursuing redress for those harms in September 2018 when it filed its lawsuit against opioid manufacturers. <u>See</u> Compl., <u>City of Boston</u> v. <u>Purdue Pharma L.P.</u>, No. 1884CV02860 (Mass. Super. Ct. Suffolk Cnty. Sept. 13, 2018).[3] The City's lead argument mischaracterizes the Massachusetts "actual knowledge" standard under Mass. Gen. Laws ch. 260, § 12. The City asserts that actual knowledge can only be imputed to plaintiffs when they have no substantial doubt at all as to the existence of defendants' wrongdoing and the resulting claim. The text of the fraudulent concealment statute says no such thing and the Massachusetts Supreme Judicial Court cases interpreting it contain no such requirement. <u>See, e.g.</u>, <u>Magliacane</u>, 138 N.E.3d at 357–58 ("Where there is fraudulent concealment, 'we have only attributed knowledge to a plaintiff who had actual knowledge of the facts, or had the means to acquire such facts, in circumstances where the probability of wrongdoing was so evident that possession of the means was equivalent to actual knowledge.'" (quoting <u>Demoulas</u>, 677

---

[3] That case remains pending in the Massachusetts Superior Court for Suffolk County, as the City has settled with some but not all defendants.

N.E.2d at 174 n.25)); Lynch v. Signal Fin. Co. of Quincy, 327 N.E.2d 732, 735 (Mass. 1975) ("[T]here is no concealment by mere failure to disclose if the aggrieved party has full means of detecting the fraud."); Brackett v. Perry, 87 N.E. 903, 904 (Mass. 1909) ("Full means of detecting the fraud which had been practiced upon the[] [plaintiffs] under circumstances which put them upon inquiry, is equivalent to actual knowledge.").

The City bases its no-substantial-doubt standard on a misunderstanding of dicta contained in a footnote in Demoulas, 677 N.E.2d at 175 n.27, a shareholders' derivative action where the plaintiff alleged fraudulent concealment by a breach of fiduciary relationship, which is evaluated under a different actual knowledge standard, id. at 174-75. The footnote itself reinforced that where there is no fiduciary relationship, actual knowledge is imputed to a plaintiff where he is provided with means to ascertain the facts, or as an equivalent, the full means of detecting the fraud, not merely suspicion of facts and fraud. Id. at 175 n.27.

The City's statutory tolling argument is that it "did not know" that "PBMs caused th[e] [opioid epidemic] harm" such that it was not "on notice of its claims" against these defendants. The pleadings and undisputed public documents properly considered on the motion to dismiss show that the City had ample reason to know of PBM wrongdoing and had ample means to discover the facts

to support a claim against PBMs before 2021. We recount some of the reasons.

First, from 2018 to 2019, at least seventy-four lawsuits, all a matter of public record, were filed by other cities, towns, and counties not just against opioid manufacturers but also against the PBM defendants. Four suits filed against the PBMs between 2018 and 2020, which became part of the federal MDL litigation in February 2018, June 2019, October 2019, and February 2020, were designated as bellwether cases against the PBMs in the MDL litigation on October 27, 2023. In re Nat'l Prescription Opiate Litig., No. 17-MD-2804 (N.D. Ohio Oct. 27, 2023), Dkt. No. 5231. It is not plausible that the City was not aware of these prior litigations.

This conclusion is further bolstered by the fact that Motley Rice, the City's counsel in its 2018 lawsuit against opioid manufacturers, received a letter on January 26, 2018, from plaintiff's counsel in County of Webb v. Purdue Pharma, L.P., which had the previous day filed the first opioid suit against the PBM defendants. Compl., County of Webb v. Purdue Pharma, L.P., No. 1:18-OP-45175, ECF No. 1 (N.D. Ohio Jan. 25, 2018) ("2018 Webb County Complaint"). The letter to Motley Rice, which came almost eight months before the City filed its complaint against the opioid manufacturers, "inform[ed] [it] of . . . the introduction of PBMs into [the MDL] litigation," stated that "opioids could not have

reached the communities seeking redress here absent the PBMs" and that the "PBMs' complicity in the scheme has not been inadvertent," and informed Boston's counsel that public pleadings "describe[d] in detail the nature of PBMs' role in the scheme."  That letter is contained in the public record.  See In re Nat'l Prescription Opiate Litig., No. 1:17-MD-02804 (N.D. Ohio Sept. 14, 2018), ECF No. 978-6, at 2.

The City's own complaint in this action alleges that PBM business practices "have not gone unnoticed in Massachusetts" (emphasis added) and cites a Massachusetts government report from 2019 titled "Cracking Open the Black Box of [PBMs]" in support. Other of the complaint's allegations at ¶¶ 200 and 201, concerning defendant Express Scripts' relationship with opioids, rely on a publicly available article from 2016 that was also cited in the complaint filed by Webb County on January 25, 2018 in its lawsuit against the PBMs.  2018 Webb County Complaint at ¶ 255 n.102.

The City's counterarguments rely on three out-of-circuit trial court decisions that have found lawsuits against PBM defendants to be timely.  See Alaska v. Express Scripts, Inc., 774 F. Supp. 3d 1150, 1164-67 (D. Alaska 2025); King County v. Express Scripts, Inc., No. 24-CV-49, 2025 WL 1082130, at *3 (W.D. Wash. Apr. 10, 2025); Ohio Cnty. Comm'n v. Express Scripts, Inc., No. 5:24-CV-142, 2024 WL 5701504, at *2-3 (N.D.W. Va. Dec. 23, 2024). All three are distinguishable for a number of reasons, including

that none apply the Massachusetts statutory scheme at issue here. Further, Alaska applied the Ninth Circuit's "relaxed" standard for pleading fraud under Rule 9(b). 774 F. Supp. 3d at 1164.

We see no need to replicate the district court's thoughtful analysis and, unless otherwise noted above, we affirm based on its cogent reasoning.

## B.

The City also argues for the first time on appeal that its state public nuisance claim is not subject to the three-year statute of limitations under Massachusetts law because its complaint alleged that "defendants' misconduct created an ongoing condition that is of itself harmful." As a newly raised argument, it is waived on appeal. See Rockwood v. SKF USA Inc., 687 F.3d 1, 9 (1st Cir. 2012) ("Our case law is clear that 'arguments not raised in the district court cannot be raised for the first time on appeal.'" (quoting Sierra Club v. Wagner, 555 F.3d 21, 26 (1st Cir. 2009))).

In any event, the argument is wrong on the merits. The City relies on Taygeta, but this case is not similar. In Taygeta, the plaintiff's "nuisance claim [wa]s based on the continuing seepage of pollutants that [wa]s still occurring within the statute of limitations," and thus was not time-barred. 763 N.E.2d at 1065 (emphases added). The City's complaint alleges no such ongoing

- 12 -

condition that is still occurring within the statute of limitations period.

### III.

The orders of the district court are **affirmed**.